UNITED STATES, Appellee,

v.

James N. THOMAS, Sergeant First Class, U.S. Army, Appellant.

No. 37,648.
CM 436839.

U. S. Court of Military Appeals.

June 8, 1981.

For Appellant: *Major Charles A. Byler* (argued); *Colonel Edward S. Adamkewicz, Jr., Captain Robert L. Gallaway* (on brief); *Lieutenant Colonel John F. Lymburner, Major Lawrence J. Sandell, Major Joseph M. Dooley, Captain Julius Rothlein,* and *Edward L. Van Oeveren,* Legal Intern assisting on the brief.

For Appellee: *Captain Douglas P. Franklin* (argued); *Colonel R. R. Boller, Major Robert B. Williams* (on brief); *Major David McNeill, Jr., Major Ted B. Borek, Captain Kenneth H. Clevenger.*

## OPINION OF THE COURT

COOK, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial, consisting of a military judge alone, of the possession, sale, and transfer of marihuana and conspiracy to sell marihuana and hashish, in violation of Articles 134 and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 881, respectively.[1] The Court granted review on two matters:

    I.  Whether the appellant is entitled to a new trial on the basis of newly discovered evidence; and

    II.  Whether the military judge improperly denied appellant's request for various witnesses.

Upon further consideration of issue II, we conclude that review was improvidently granted, and so much of the order granting review pertaining to it is vacated.

---

1. In accordance with his pleas, the appellant was acquitted of other offenses.

As to the new trial issue, Special Agent Walters testified that, while acting undercover, he became acquainted with an informant named Evans. On December 19, 1976, he and Evans proceeded to an apartment occupied by appellant. Appellant refused to admit Agent Walters, but he allowed Evans to enter. The next day, Walters and Evans again went to the apartment; on this occasion both were admitted by appellant. After some negotiations, Agent Walters gave the appellant $100, and Evans gave him $60 for a quantity of marihuana. The contraband was not delivered at this time, but by agreement, Walters and Evans left the apartment and returned later that evening, at approximately 5 or 10 minutes before midnight. Appellant then gave them a substantial quantity of marihuana. On cross-examination, Agent Walters stated that his notes reflected he went to appellant's apartment on December 20th at 1937 hours, which he explained was "5:37 civilian time."

Sergeant Grant testified that he met appellant at appellant's apartment on December 20th at approximately 1800 hours. He and appellant proceeded to another apartment, where appellant obtained a quantity of marihuana. They returned to appellant's apartment and packaged the marihuana into matchboxes. Someone knocked at the door and attempted to enter; Grant recognized Evans' voice. There was a stranger with Evans, but appellant would not allow him to enter the apartment. After Evans had left, appellant stated that Evans and his companion had wanted "to make a purchase," but he said "he wasn't ready." Appellant gave Grant quantities of marihuana and hashish, which Grant agreed to sell and to divide the proceeds with appellant. Grant maintained that he left appellant's apartment at approximately 9:00 or 10:00 p.m., but he acknowledged that the approximation of time was only a "guess." On the following day, Grant sold quantities of marihuana and hashish to Agent Walters and informant Evans.

Sergeant Grant testified under a grant of immunity and an agreement that he would receive an administrative discharge. On cross-examination, he acknowledged he had used numerous types of drugs. Defense witnesses testified that they would not believe Grant under oath.

Appellant presented a number of favorable character witnesses. Additionally, he presented several witnesses who testified that appellant bowled as a member of a bowling team on the evening of December 20th. This event took place approximately between the hours of 2015–2330. Finally, the defense presented a witness who stated he had solicited a ride from the appellant on December 20th. They left the appellant's apartment between 1915 and 1930 hours and arrived at their destination approximately 15 minutes later. The Government called a witness in rebuttal who testified that appellant came to him approximately two weeks after appellant's apprehension and told him that he had accepted a quantity of marihuana and hashish as payment of a debt. Appellant further stated that the "CID had found out about it and it was a stupid thing to do."

During trial, defense counsel remarked that trial counsel had informed him that Agent Walters "was the subject of an investigation being conducted by the CID." Counsel requested and obtained a continuance from May 28 to June 6 for the purpose of inquiring further into the matter. Upon reconvening, the defense counsel remarked:

> Now, your honor, based on the information I've received from Colonel Stiepock I have explained to my client the implications of the allegations, the implications of the possible results of the investigation which would be adverse to the witness. Based on the information at this time the defense will make no further efforts to continue the case for the purpose of exploring whether or not the end results would be favorable or beneficial to this man as the credibility of the witness. At this time the defense rests.

The trial terminated on June 6 and the convening authority acted on January 31, 1978. Defense counsel requested a delay of the post-trial proceedings. In a letter ad-

dressed to the convening authority, defense counsel requested withholding of action "until all evidence concerning Walters' criminal misconduct is available for your consideration." On May 19, 1978, Agent Walters was convicted, pursuant to his pleas, of making a false official statement on August 5, 1976, by falsely claiming that reimbursement had been made to a confidential informant. Appellant filed a petition before this Court asserting that the conviction of Agent Walters is adequate grounds for a new trial. As previously noted, we specified that issue in our order granting his petition for grant of review.

■ In *United States v. Chadd*, 13 U.S.C.M.A. 438, 32 C.M.R. 438 (1963), we enumerated the circumstances under which an accused may be accorded a new trial for newly discovered evidence as provided in Article 73, UCMJ, 10 U.S.C. § 873. They are:

    a. The record of trial, petition, and other matters presented by the accused indicate an injustice may have resulted.

    b. The evidence in fact is newly discovered.

    c. Due diligence to discover it was exercised at the time of trial.

    d. The newly discovered evidence will probably cause a different result when presented to another court-martial.

*Id.* at 442, 32 C.M.R. at 442. *Accord*, para. 109*d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

■ The parties have focused primarily on condition (d).[2] Appellant asserts that under *United States v. Whitley*, 18 U.S.C.M.A. 20, 39 C.M.R. 20 (1968), and *United States v. Chadd, supra*, he is entitled to a new trial. The Government contends that probability of a different result is lacking. We agree with the Government.

In *Chadd*, the accused was convicted of rape. He defended on the ground that the victim had consented. We held that newly discovered evidence as to the victim's homosexuality was relevant as to both her credi-

bility and the issue of her consent. Additionally, the Court observed that the victim's testimony was "replete with matters which might bring puzzlement to the mind of the most astute fact finder." *Id.* at 443, 32 C.M.R. at 443. In *Whitley*, the Court granted a petition for new trial because the evidence demonstrated more than a probability that two prosecution witnesses had lied during the trial as to a material matter.

The new evidence in the present case is far less pervasive. While it tends to reflect adversely on Agent Walters' credibility, it is not directly related to any other issue litigated at trial. The evidence proves Walters engaged in misconduct, but the misconduct has not been related to Walters' role in appellant's case. Appellant observes that Walters testified that he went to appellant's apartment at 5:37 p. m., while also asserting that he made the visit at 1937 hours. As 1937 hours is the equivalent of 7:37 p. m., Walters erred in equating it to 5:37 p. m., but his testimony clearly indicates that he used the two terms as equivalents; and his estimate of the time is supported by Grant's account of the first visit Evans and, inferentially, Walters made to appellant's apartment.

Appellant perceives a second material discrepancy between Walters' trial testimony and the new evidence. It will be recalled that Walters testified that he and Evans gave appellant a total of $160. Appellant contends that a report shows that Walters submitted a statement to the effect that the expenditure was only $100. We do not deem the difference to be a material contradiction of Agent Walters as he had indeed given appellant only $100. Moreover, if Walters were engaging in fraudulent claims against the Government, we would expect that his claim of expenditures in appellant's case would have been in an amount higher than that in the report upon which appellant relies.

Here, trial counsel did not withhold favorable evidence from the defense; on the

---

2. Paragraph 109*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), defines this condition as "would probably produce a substantially more favorable result for the accused."

contrary, he informed defense counsel of the investigation then pending against Walters. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As the Supreme Court noted in *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), "new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Id.* at 9, 77 S.Ct. at 5 (footnote omitted). *See United States v. Johnson*, 327 U.S. 106, 111 n. 5, 66 S.Ct. 464, 466 n. 5, 90 L.Ed. 562 (1946). Although the Supreme Court granted the accused a new trial in *Mesarosh*, it did so because it found circumstances beyond mere impeachment. The Court specifically observed that the Government itself had questioned whether the witness involved had testified truthfully at the accused's trial. Furthermore, the present case, unlike *United States v. Chisum*, 436 F.2d 645, 649 (9th Cir. 1971), does not involve a conspiracy by government agents to wrongfully convict an individual through subornation of perjury and the making of false statements in a case "related to contemporaneous and somewhat similar events." Finally, the witness' crime in the present case is not directly related to the appellant's criminal misconduct as in *United States v. Senft*, 274 F. 629 (E.D.N.Y. 1921). Thus, the evidence in the present case is limited to general impeachment. Considering the entire evidence of record, we are convinced that this evidence would not "probably cause a different result."

The decision of the United States Army Court of Military Review is affirmed. The Petition for New Trial is denied.

Judge FLETCHER concurs.

EVERETT, Chief Judge (concurring in part and dissenting in part):

I agree with the majority's disposition of the issue concerning denial of appellant's request for various witnesses. However, my review of the evidence of record convinces me that the petition for new trial should be granted.

In *United States v. Chadd*, 13 U.S.C.M.A. 438, 32 C.M.R. 438 (1963), we discussed the four requisites for granting a new trial:

a. The record of trial, petition, and other matters presented by the accused indicate an injustice may have resulted.

b. The evidence in fact is newly discovered.

c. Due diligence to discover it was exercised at the time of trial.

d. The newly discovered evidence will probably cause a different result when presented to another court-martial.

*Id.* at 442, 32 C.M.R. at 442. *See* para. 109*d*, Manual for Courts-Martial, United States, 1969 (Revised edition). In my view, appellant has fulfilled these requirements in the case at hand.

Prior to the argument on findings, trial counsel had revealed to defense counsel that an investigation was pending of a government witness, Special Agent Walters of the Criminal Investigation Division (CID). After a continuance had been granted in appellant's trial because of this pending investigation, the trial was resumed—apparently after a conversation between appellant's defense counsel and a CID official concerning the status and progress of the investigation. The election by defense counsel not to seek a further continuance did not reflect any lack of due diligence on his part. Instead, in view of various prior delays in completing appellant's trial and the uncertainty as to when the investigation of Walters would be completed, the decision to proceed was simply a realistic response to the delay that would be involved in awaiting the end of the investigation.

Special Agent Walters was a central prosecution witness. Since the Government did not call an alleged eye witness, Sergeant Evans, its case rested largely on the testimony of Special Agent Walters and of an alleged accomplice, who was testifying under a grant of immunity. Walters had served as an undercover agent for some 3 years and, so far as the trier of fact might discern, was reliable. Certainly much less reliance would have been placed on his tes-

timony had it been known that, during the very period of time when appellant's alleged offenses were committed, Walters had been submitting false invoices as to his investigative expenses. The misconduct of Walters and his subsequent conviction by general court-martial not only would have suggested to the trier of fact that he was not a trustworthy witness but also would have made more plausible the hypothesis that—instead of paying to appellant $100.00 for drugs, as he testified he had done—Walters had pocketed the government funds and then had concocted a false explanation in order to conceal the embezzlement. Since my reading of the record leads me to conclude that the new evidence provided by the investigation of Walters would probably produce a more favorable result for the appellant if presented to another court-martial,[1] I would grant the petition for a new trial.

1. Even though impeaching evidence generally does not warrant granting a new trial, in the exceptional case it can do so. *See, e. g., United States v. Whitley,* 18 U.S.C.M.A. 20, 39 C.M.R. 20 (1968); *United States v. Sutton,* 34 C.M.R. 490 (ABR 1963); *United States v. Gabriel,* 597 F.2d 95 (7th Cir. 1979), *cert. denied,* 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979); *United States v. Harris,* 462 F.2d 1033 (10th Cir. 1972); *United States v. Chisum,* 436 F.2d 645 (9th Cir. 1971); *United States v. Atkinson,* 429 F.Supp. 880 (E.D.N.C. 1977); *United States v. Gordon,* 246 F.Supp. 522 (D.D.C. 1965); *United States v. Senft,* 274 F. 629 (E.D.N.Y. 1921). For a good discussion of new trials based on impeaching evidence, *see* Carrle, "New Trial Petitions under Article 73, UCMJ," 13 *The Advocate* 2, 7–11 (Jan.–Feb. 1981).