UNITED STATES, Appellee,

v.

Chief Warrant Officer (W–3) Charles P. DYER, SSN 021–32–9908, United States Army, Appellant.

CM 441944.

U.S. Army Court of Military Review.

12 Aug. 1983.

Captain Marcus C. McCarty, JAGC, argued the cause for the appellant. With him on the brief were Major Raymond C. Ruppert, JAGC, and Captain Thomas R. Peppler, JAGC.

Major Thomas M. Curtis, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Eugene R. Milhizer, JAGC.

Before HANSEN, NAUGHTON and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

## AND

## ACTION ON PETITION FOR NEW TRIAL

COHEN, Judge:

Contrary to his pleas appellant was convicted by a general court-martial composed of officer members of rape, two specifications of forcible sodomy, solicitation to engage in indecent acts, four specifications of indecent acts, pandering, two specifications of mailing obscene material and two specifications of communicating a threat. He was sentenced to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of $920.00 pay per month for six

years. The convening authority approved the sentence.

At trial appellant raised the defense of insanity to the charged offenses. This issue was extensively litigated. Both the defense and the Government called a psychiatrist to testify as to appellant's mental responsibility. The psychiatrists agreed appellant has a mental disease but disagreed with respect to appellant's capacity to conform his conduct to the requirements of the law. The defense's psychiatrist maintained that appellant did not have the substantial capacity to conform his conduct while the Government's psychiatrist maintained he did. Although lay testimony was received on the issue of appellant's sanity, the resolution of this issue ultimately depended upon the credibility of the experts.

Appellant has now petitioned for a new trial based on newly discovered evidence concerning the Government's expert witness, Colonel Terry Chamberlain, an Army psychiatrist and president of the sanity board convened to test appellant. The newly discovered evidence consists of Colonel Chamberlain's conviction for making false medi-cal claims in California * and his extra-marital affair with a former patient, Ms. R. The latter evidence consists of an affidavit executed by Ms. R alleging that Colonel Chamberlain overprescribed drugs to Ms. R to increase both her dependency upon him and her sexual response to him.

■ To sustain his petition for a new trial, appellant has the burden of affirmatively establishing that an injustice has resulted from the findings or the sentence, as well as: (1) that the evidence, in fact, is newly discovered; (2) that the evidence is not such that it could have been discovered at the time of trial in the exercise of due diligence; and (3) that the evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the appellant. Paragraph 109*d*,

Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Bacon*, 12 M.J. 489 (C.M.A.1982); *United States v. Thomas*, 11 M.J. 135 (C.M.A.1981). The appellant has met his burden with respect to the first and second elements. The sole issue for our determination is whether the evidence concerning Colonel Chamberlain's extracurricular activities would have probably produced a more favorable result for appellant.

The Government contends that this evidence is no more than impeachment evidence which, as a general rule, is not an adequate basis for the grant of a new trial. *Mesarosh v. United States*, 352 U.S. 1, 7, 77 S.Ct. 1, 4, 1 L.Ed.2d 1 (1956). This general rule is merely an articulation of the common assumption that evidence of a witness's credibility is typically not as important as substantive evidence. The validity of this assumption turns upon the relationship between the "impeaching" evidence and the total circumstances of the case. The "general rule" does not abrogate the necessity for determining under the total circumstances of a case whether the "new evidence" would have produced a different result. *United States v. Sutton*, 34 C.M.R. 490 (A.B.R.1963). Evidence solely of an impeaching nature might well be sufficiently serious to support a new trial. *United States v. Gordon*, 246 F.Supp. 522 (D.D.C. 1965). In any case, contrary to the Government's assertion, the evidence before us is not merely impeachment evidence. While such a categorization may be applicable to Colonel Chamberlain's conviction for medical fraud, it does not apply to the allegations by Ms. R.

Ms. R's allegations do more than impugn Colonel Chamberlain's credibility; they raise serious doubts concerning Colonel Chamberlain's ability to propound an opinion about appellant's sanity. If Ms. R's allegations are accepted as true, the similarity between Colonel Chamberlain's conduct

---

* California has a "medi-cal program" which pays physicians for medical services they provide to people within the program's coverage. Colonel Chamberlain was convicted of presenting claims to this program for the payment of medical services provided to patients which he did not actually treat.

with Ms. R and appellant's conduct with his step-daughter is inescapable. Both Colonel Chamberlain and appellant abused their positions of trust in order to dominate and control these women. Colonel Chamberlain, as Ms. R's psychiatrist, allegedly overprescribed drugs to Ms. R to increase her malleability and her dependency upon him. The appellant, as the first father-figure known to his stepdaughter, told his stepdaughter that an organization analogous to the syndicate and referred to only as "they" threatened to injure her family unless she complied with their demands. Colonel Chamberlain, through the expedient of drugs, and appellant, through the fictional threat of "they," were able to manipulate these women to satisfy their sexual desires. This parallel between Colonel Chamberlain's and appellant's conduct raises the question of whether Colonel Chamberlain was able to render a detached and professional evaluation of appellant's sanity when he had engaged in similar behavior. We cannot conscientiously say that if the court members had been presented with this evidence they would have accepted Colonel Chamberlain's conclusion that appellant was sane.

Considering the facts and circumstances of this case, we believe the admission of the evidence concerning Colonel Chamberlain would "probably cause a different result." In reaching this conclusion we are not concerned with how the newly discovered evidence affects our judgment of appellant's case. Our inquiry is whether a significant chance existed that this evidence, as developed by a skilled counsel, could have induced a substantially more favorable result for the appellant. Believing as we do that the resolution of appellant's sanity turned upon which expert the court members chose to believe, we find that this new evidence would have probably affected the weight the court members attached to Colonel Chamberlain's testimony.

For the foregoing reasons, the petition for new trial is granted. Since a new trial is in order, we do not address appellant's assignments of error as these issues are now moot. The approved findings and sentence are set aside and a new trial may be ordered.

Chief Judge HANSEN and Judge NAUGHTON concur.