**UNITED STATES, Appellee,**

v.

**Chief Warrant Officer (W–3), Charles P. DYER, 021–32–9908, United States Army, Appellant.**

**CM 441944.**

U.S. Army Court of Military Review.

6 May 1986.

**579**

For Appellant: Captain Bernard P. Ingold, JAGC (argued); Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC (on brief).

For Appellee: Captain Samuel J. Rob, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Captain Michael W. Hoadley, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

AND

ACTION ON PETITION FOR
NEW TRIAL

FELDER, Judge:

Appellant pleaded not guilty but was convicted of various sex-related offenses by a general court-martial in October 1981. This court granted appellant's petition for a new trial because of misbehavior by a government psychiatric witness. *United States v. Dyer*, 16 M.J. 894 (A.C.M.R.1983). Notwithstanding extensive evidence of his lack of mental responsibility, appellant was again convicted in March 1984 by court members of essentially the same charges and sentenced to confinement at hard labor

for four years and partial forfeitures of pay.[1]

## I. THE SANITY ISSUE

Appellant presented a defense based upon insanity and favorable character evidence. He argues that the evidence presented at trial is insufficient to prove beyond a reasonable doubt that he was sane at the time he committed the offenses. The psychiatric witnesses for the government and defense agreed that at the time of the offenses appellant was suffering from a mental disease or defect associated with deviant psychotic sexual behaviors and disorders. Their opinions differed, however, concerning appellant's capacity. One defense psychiatrist concluded that appellant had diminished capacity to appreciate the criminality of his conduct, while another defense psychiatrist concluded that appellant lacked substantial capacity in that regard. Both were unanimous in their findings, however, that appellant lacked substantial capacity to conform his conduct to the requirements of the law. Conversely, three members of a sanity board decided that appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was diminished but not substantially lacking.

The basis for the conflict of opinions between the defense and government witnesses lies in the fact that appellant performed bizarre sexual acts with his stepdaughter for several years, but only when his wife was not at home, and he scrupulously concealed his crimes to avoid detection. The defense experts inferred from this that appellant was capable of responding to structural controls but that when they were removed, he lost the ability to deal with very powerful psychological and emotional pressures that compelled him to act irrationally. On the other hand, the government experts believed appellant was not insane because he could selectively confine his aberrant sexual acts to times when he would not be discovered.

Appellant asserts that the defense psychiatrists should be believed because, when compared with the government's psychiatrists, they are more professionally qualified; their examination of him was performed at times closer to the charged offenses; they spent more time observing him; and they made more extensive use of personality background materials. The government counters by arguing that the sanity board's conclusions are more plausible when considered in the context of the entire case, particularly appellant's ability to carefully conceal his behavior.

■■■ A divergence of opinion among psychiatric experts is not uncommon. *See United States v. Brazil,* 4 M.J. 668 (A.C.M. R.1977). However, their testimony is presented to assist fact finders in resolving the sanity issue and their expertise should not be arbitrarily ignored. Nevertheless, notwithstanding the qualifications, observations, and conclusions of psychiatrists, fact finders are not required to accept their testimony simply because it comes from experts or necessarily give it more weight than the testimony of lay witnesses. *United States v. Wilson,* 40 CMR 112 (C.M.A. 1969); *see* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 74a(2) [hereinafter cited as MCM, 1969]. As far as human behavior is concerned, the difference between diminished capacity and lack of substantial capacity to conform one's conduct to the requirements of the law is not subject to precise measurement, as evidenced by the dispute among the psychiatrists here. *See United States v. Lyons,* 731 F.2d 243, 248 (5th Cir.1984) ("The line between an irresistible impulse and an impulse not resisted is probably no sharper than the line between twilight and dusk."). We believe, as the court members below did, that appellant did not lack substantial capacity to appreciate the criminality of his conduct or to act

---

1. Appellant derived substantial benefit from the new trial in regard to punishment. The original sentence included a dishonorable discharge. The sentence of the new trial did not include a punitive discharge.

in accordance with the law. Our decision is not buttressed solely by the opinions of the experts. The evidence presented by the prosecutrix and witnesses who testified for appellant also weighs heavily in our determination.

## II. PETITION FOR NEW TRIAL

Appellant has filed a second petition for a new trial based on misconduct by two members of a sanity board who testified at the second trial that he was sane. After the trial, one sanity board member, Colonel Gober, Commander of Munson Army Hospital, was reprimanded for fraudulently obtaining for his use on numerous occasions controlled medications from the hospital pharmacy. The other member, Colonel Strefling, hospital chief psychiatrist, aided Colonel Gober by signing two false prescriptions. This fraudulent scheme occurred prior to appellant's trial but was not discovered by investigators until after the trial was completed. Appellant argues that this newly discovered evidence pertaining to the unethical and illegal activities of two of the three sanity board members substantially undermines their credibility, and that court members at a new trial would undoubtedly ascribe less weight to their testimony on the most significant issue litigated at trial, appellant's sanity.

We agree that the misconduct of Colonels Gober and Strefling in falsely obtaining medications adversely reflects on their credibility, but impeaching evidence alone is usually insufficient to warrant a new trial. *United States v. Thomas*, 11 M.J. 135 (C.M.A.1981). Even so, appellant's petition for a new trial should be granted if the post-trial evidence, when considered with all the other evidence in the case, would probably produce a substantially more favorable result for him. MCM, 1969, paragraph 109*d; see* Article 73, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 873. For several reasons we are not persuaded that a different result would be attained here.

First, unlike *United States v. Dyer, supra*, 16 M.J. at 896, where the psychiatrist's misconduct was similar to that of appellant's, the wrongdoings of the two witnesses in this case were not related to their role as members of the sanity board. *Thomas, supra*, 11 M.J. at 137. Second, the government did not rely heavily on the fact that its experts' testimony was unimpeached nor did it portray its experts as unimpeachable. On the contrary, the veracity of Colonel Strefling, the government's principal witness on appellant's mental status, was subjected to searching cross-examination. In fact, Colonel Strefling conceded that his testimony was only "peanuts" when compared with the testimony of the defense's leading witness on appellant's mental condition. *See United States v. Troutt*, 24 CMR 246 (C.M.A.1957). Colonel Gober was not a psychiatrist. The defense did not cross-examine him, apparently because his testimony on direct examination was either cumulative or innocuous to the defense's cause. Third, the new evidence affects only the general credibility of the two expert witnesses and not their professional competence. Since there is no indication that they lied at trial but merely expressed their professional opinions as to the sanity of appellant, the new evidence would have minimal impact on their testimony; certainly not enough to change the trial results.

## III. THE OBSCENITY STANDARD

Appellant was convicted of two specifications of depositing obscene pictures of his stepdaughter in the United States mail in violation of Article 134, UCMJ, 10 U.S.C. § 934. Because the mailing and delivery occurred in Hawaii, and appellant was tried there, the military judge at appellant's first trial instructed the court members to apply the contemporary community standards of the Island of Oahu to determine whether the pictures were obscene. At the subsequent trial conducted at Fort Leavenworth, Kansas, the military judge charged the court members to apply the obscenity standard of "the military community." Arguing that the local community standard in Oahu should apply, appellant objected to

that instruction on the basis that a military community standard is just as hypothetical and unascertainable as the national standard rejected in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In that case the Supreme Court fashioned the following guidelines for triers of fact to determine obscenity:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently öffensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* 413 U.S. at 24, 93 S.Ct. at 2615 (citations omitted).

In *Miller* it was decided that this country is too large and too diverse to provide a single standard for all fifty states. It is neither realistic nor constitutionally sound to require the people of Maine or Mississippi, for example, to accept public depiction of conduct found tolerable in Las Vegas or New York. People in different states vary in their tastes and attitudes. Material should be judged by its impact on the average or reasonable person in the community rather than a particularly sensitive or insensitive person. *Id.* at 30, 32, 33, 93 S.Ct. at 2618, 2619, 2620; *Mishkin v. New York,* 383 U.S. 502, 508–509, 86 S.Ct. 958, 963–964, 16 L.Ed.2d 56 (1966); *Roth v. United States,* 354 U.S. 476, 489–490, 77 S.Ct. 1304, 1311–1312, 1 L.Ed.2d 1498 (1957).

■ The standards set forth in *Miller* for testing the constitutionality of state legislation regulating obscenity are applicable to federal legislation. *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); *United States v. 12 200-ft. Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). While we

recognize that military jurisprudence is and has always been separated from the ordinary federal and state judicial systems in this country, the same rule should apply to the military because it does not contravene any portion of the Uniform Code of Military Justice; it is not contrary to any long-established military principle; and there is nothing in the Manual for Courts-Martial inconsistent with its provision.[2] *See United States v. Tempia,* 37 CMR 249 (C.M.A. 1967).

Appellant asserts now, as he did at trial, that the "military community standard" is just as constitutionally infirm as the national standard. He implicitly argues that the military community, composed of individuals from all sectors of life and drawn from all regions of the country, is really no different from the national community. Thus, it would seem to follow that the military community standard does not satisfy the local community standard approach.

Although appellant's argument might have superficial appeal, it should not prevail in this case for both practical and jurisprudential reasons. The government persuasively argues that a local community standard is simply unworkable in the military justice system. They point out that:

> 1) Many military judges preside alone over cases at a number of different installations and can hardly be expected to be familar with each local community's values regarding obscenity;
>
> 2) Many court members will either be new to an area or have limited contact with the local community, thus precluding any awareness on their part of local standards; and
>
> 3) Applying local standards in foreign locations could prove enormously difficult.

Thus, as a practical matter, we may have little choice in obscenity cases other than to apply a military community standard. It is

---

2. This case was tried when the 1969 Manual for Courts-Martial was in effect. We find no reference in it to "community standards". However, the 1984 edition, part IV, paragraphs 89*c* and 94

*c,* provide that there must be a violation of "community standards" in order for matter to be considered obscene or language to be termed indecent.

either that or live under a fiction that military members are aware of and can apply local community standards. In addition, although one can agree that the military services are diverse and have a national character, it is also true that courts have consistently recognized the uniqueness of the military society, particularly when it demands certain standards of behavior from its members. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Scoby*, 5 M.J. 160 (C.M.A.1978). Moreover, the ability of court-martial members to apply a military community standard may be enhanced because of the criteria for court-martial membership set forth in Article 25 of the Code.

■ Finally, it must be noted that the Supreme Court's "holding in *Miller* that California could constitutionally proscribe obscenity in terms of a 'statewide' standard did not mean that any such precise geographic area is required as a matter of constitutional law." *Hamling v. United States*, 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974). The thrust of the *Miller* opinion and its progeny is that obscenity *may be* judged by the contemporary standard of the average person in a city, county, state, or judicial district. *United States v. McManus*, 535 F.2d 460, 464 (8th Cir.1976) (State of Iowa); *United States v. Miscellaneous Pornographic Magazines*, 400 F.Supp. 353, 356 (N.D.Ill. 1975) (City of Chicago); *People v. Tabron*, 544 P.2d 380, 381 (Colo.1976) (State of Colorado); *Davison v. State*, 288 So.2d 483, 486–488 (Fla.1973) (County of Alachua). In other words, the language of the opinion was cast in permissive terms, *i.e.*, state juries *were permitted* to apply local standards in obscenity cases. There is no sup-

port for the proposition that they had to, only that it was "constitutionally adequate" for them to do so. Accordingly, we hold that the application of a contemporary military community standard to obscenity in trials by courts-martial does not offend the constitution.[3] In any event, we believe that the pictures deposited for mailing by appellant would inevitably have been found obscene under either civilian or military community standards.

## IV. SOLICITATION INSTRUCTION

■ Among numerous charges, appellant was convicted of solicitating his stepdaughter to engage in indecent, lewd and lascivious acts in violation of Article 134, UCMJ. Prior to findings, the military judge charged the court members as to the elements of the offense of solicitation in accordance with the model instruction in paragraph 3–178, Military Judges' Benchbook, Department of the Army Pamphlet 27–9 (May 1982). The instruction is fatally defective because the military judge did not inform the court members that in order to find appellant guilty of solicitation they must be convinced that he induced his stepdaughter with the "specific intent" that she actually commit indecent acts.[4] *United States v. Mitchell*, 15 M.J. 214 (C.M.A. 1983); *United States v. Hubbs*, 20 M.J. 909, 911 (A.C.M.R.1985) (Felder, J., concurring).

■ Nevertheless, the instruction and the evidence are sufficient to permit affirmance of the lesser included general intent offense of wrongfully requesting the commission of an offense in violation of Article 134, UCMJ. *United States v. Benton*, 7 M.J. 606 (N.C.M.R.1979), *pet denied*,

---

**3.** The instruction that relates to obscenity in paragraph 3–162, Military Judges Benchbook, Department of the Army Pamphlet 27–9 (May 1982), does not define "community standards" in geographic or organizational terms. Since an instruction directing jurors to apply "community standards" without specifying the "community" has been upheld in *Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), the military instruction passes constitutional muster. Nevertheless, the requirement that judges provide "lucid guideposts," *United*

*States v. Buchana*, 41 CMR 394 (C.M.A.1970), for members' deliberations suggests further specificity by identifying the military community as the one whose standards are to be applied.

**4.** Since the date of this trial, the Military Judges' Benchbook has been changed to include in the instruction specific intent as an element of the crime of solicitation. *See also* the Manual for Courts-Martial, United States, 1984, Part IV, paragraph 105.

8 M.J. 227 (C.M.A.1980); *see United States v. Lilly,* M.J. 701 (N.C.M.R.), *pet. denied,* 8 M.J. 36 (C.M.A.1979); *but see United States v. Mitchell,* 11 M.J. 907, 912 n. 4 (A.C.M.R.1981) (O'Donnell, J., concurring in part and dissenting in part).

The remaining assigned errors have been considered and determined to be without merit.

Accordingly, we affirm the finding of guilty of Specification 1, Charge III, except the word, "solicit," substituting therefor the words, "communicate certain language, to wit: to have intercourse or oral sodomy with another in his presence, to" and adding after the last word, "which language requested her to commit indecent acts, an offense under the Code." The remaining findings of guilty are affirmed. The petition for a new trial is denied. Having reassessed the sentence in light of the modified findings and the entire record, the approved sentence is affirmed.

Senior Judge WOLD and Judge NAUGHTON concur.