# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist KRISTOPHER M. HADLEY**
**United States Army, Appellant**

ARMY 20150766

Headquarters, 1st Infantry Division and Fort Riley
Charles D. Pritchard, Jr., Military Judge
Colonel Warren L. Wells, Staff Judge Advocate

For Appellant:  Captain Katherine L. DePaul, JA (argued); Lieutenant Colonel Jonathan F. Potter, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul, JA (on brief).

For Appellee:  Captain Christopher A. Clausen, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

2 May 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

In this judge-alone general court-martial, the military judge purported to find appellant guilty of one specification, by exceptions and substitutions, of possessing digital images of what appears to be minors constituting child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2012) [hereinafter UCMJ].  I find instead that the military judge *acquitted* appellant of the charged offense.

Additionally, even assuming that the military judge did not acquit appellant of the offense outright, the findings as announced represent a material variance from the charged offense and deprived appellant of notice as to what he was defending

against, all of which prejudiced appellant. Accordingly, we set aside the findings and approved sentence of a bad-conduct discharge and confinement for five months.[1]

## BACKGROUND

The government charged appellant with a single charge and specification of possession of child pornography under Article 134, UCMJ. The specification read as follows:

> In that [appellant], did, at or near Fort Riley, Kansas, between on or about 25 September 2014 and on or about 9 March 2015, knowingly and wrongfully possess child pornography, to wit: digital images of a minor engaging in sexually explicit conduct, such conduct being to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

The military judge announced the following findings:

> Guilty, except the words "digital images of", and substituting therefor the words "obscene digital images of what appears to be". Of the excepted words, Not Guilty; Of the substituted words: Guilty.

Applying the military judge's findings to the specification, the specification, reflecting the deletions and additions, would read as follows:

> In that [appellant], did, at or near Fort Riley, Kansas, between on or about 25 September 2014 and on or about 9 March 2015, knowingly and wrongfully possess child pornography, to wit: ~~digital images of~~ <u>obscene digital images of what appears to be</u> a minor engaging in sexually explicit conduct, such conduct being to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

The findings as announced acquitted appellant of possessing "digital images" and found appellant guilty of possessing digital images. The announced findings also added the images were "obscene." Finally, the announced findings relieved the government from proving the images were of actual minors and required only proof

---

[1] Appellant personally raised several allegations of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we do not address given our decision in this case.

the images "appeared to be" minors. The language of a specification as charged is within the exclusive control of the government. *United States v. Morton*, 69 M.J. 12 (C.A.A.F. 2009).

## LAW AND DISCUSSION

### A. Acquittal

"A finding on the guilt or innocence of the accused is not final until it is formally and correctly announced in open court." *United States v. London*, 4 C.M.A. 90, 96, 15 C.M.R. 90, 96 (1954). "The general findings of a court-martial state whether the accused is guilty of each offense charged." Rule for Courts-Martial [hereinafter R.C.M.] 918(a). "One or more words or figures may be excepted from a specification, and, when necessary, others substituted, if the remaining language of the specification, with or without substitutions, states an offense by the accused which is punishable by court-martial." R.C.M. 918(a)(1) discussion. "However mistaken or wrong it may be, an acquittal cannot be withdrawn or disapproved." *United States v. Hitchcock*, 6 M.J. 188, 189 (C.M.A. 1979) (citing *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

The military judge *acquitted* appellant of the words "digital images of" and then found him guilty of those same words. By acquitting appellant of possessing "digital images," the military judge gutted the specification. Appellant was found *not guilty* of possessing digital images. As digital images were the only type of images at issue, this finding settles the matter. There is probably no greater point in the trial where words, once announced in open court, must be carefully uttered and strictly construed. *See Hitchcock*, 6 M.J. at 189. I find this reading of the announced findings–that the military judge acquitted appellant of the specification–appropriate.[2]

### B. Material or Fatal Variance

Even assuming that, in context, the military judge's exceptions of the language "digital images of" should be understood as merely grammatical, we still

---

[2] Were I to consider the substantive evidence, I would likely agree with the dissent that the accused possessed child pornography of digital images of both actual minors and what appear to be minors. However, Article 66(c), UCMJ, limits our consideration to findings of guilty; it does not extend to this court the ability to reconsider findings of not guilty. Additionally, the strength of the government's evidence cannot affect our analysis of whether appellant knew what he was defending against.

find the findings as announced to be a fatal variance from the specification as alleged.

First, we note under such an interpretation, the military judge did not find appellant guilty by "exceptions and substitutions." There would be no exceptions. Rather, the military judge would find appellant guilty by *additions*. So understood, the military judge added the words "obscene" and "what appears to be" to the specification as alleged. These additions would be a major change to the specification.[3]

A material variance is one that substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment for the offense. *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009). "Whether there was a fatal variance is a question of law reviewed de novo." *United States v. Treat*, 73 M.J. 331, 335 (C.A.A.F. 2014). R.C.M. 307(c)(3) provides for notice pleading.

We must balance notice pleading with fair notice. *United States v. Tunstall*, 72 M.J. 191 (C.A.A.F. 2012) ("[A]n accused has a right to know what offense and *under what legal theory* he will be convicted." (quoting *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2009)); *United States v. Riggins*, 75 M.J. 78 (C.A.A.F. 2016); *United States v. Ober*, 66 M.J. 393 (C.A.A.F. 2008) (Military appellate courts cannot affirm a criminal conviction on the basis of a theory of liability not presented to the trier of fact. To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.).

If there is a material variance, the court must determine whether the material variance prejudiced appellant. *Treat*, 73 M.J. at 336. The Court of Appeals for the Armed Forces (CAAF) has "placed an increased emphasis on the prejudice prong" of the fatal variance analysis. *Id*. (quoting *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006). "A variance can prejudice an appellant by (1) putting 'him at risk of another prosecution for the same conduct,' (2) misleading him 'to the extent that he has been unable adequately to prepare for trial,' or (3) denying him 'the opportunity to defend against the charge.'" *Marshall*, 67 M.J. at 420 (quoting *United States v. Teffeau*, 58 M.J. 62, 67 (C.A.A.F. 2003)). To determine prejudice, the court "looks closely at the specifics of the defense's trial strategy when determining whether a material variance denied an accused the opportunity to defend against a charge." *Treat*, 73 M.J. at 336. This prejudice is determined by considering "how the defense channeled its efforts and what defense counsel focused on or highlighted." *Id*. (internal citations omitted).

---

[3] Post-referral changes to specifications are permissible under R.C.M. 603, and the case law addressing impermissible changes to a specification parallels the material or fatal variance case law under R.C.M. 918(a)(1).

At trial, the understanding of the parties and the military judge was that appellant was charged with possession of child pornography that depicted *actual* minors. The military judge's announced findings were therefore understood as acquitting appellant of possessing images of actual minors, but convicting appellant of possessing images of "what appears to be minors." We find this delta to be a fatal variance based on the facts of this case.

Appellant's entire defense at trial was the government had failed to prove the images depicted actual minors. On appeal, appellant asks us to infer from the docketing request that appellant tactically decided to rush to trial in order to be tried on the specification as alleged. We find this inference appropriate. Appellant's closing argument focused repeatedly on the lack of proof that the images were of actual minors. Thus, what we have is a case in which the defense strategy hinged on the government's inability to prove the images depicted actual minors, only to have appellant convicted on an alternate theory that the government abandoned based on the charging decision. We find appellant was not on notice he would have to defend against the uncharged theory the images depicted only what appeared to be minors.[4]

Moreover, we find this lack of notice to be highly prejudicial in this case. First and foremost, as just explained, the defense relied heavily on the government's charging decision. Second, the theory the images were "obscene" was not introduced into the trial until findings. Stated again, appellant only became aware he had to defend against the images being "obscene" *after* findings of guilty were announced. Accordingly, appellant was deprived of the ability to introduce evidence that the images were not obscene or that the images did not depict what *appeared* to be minors.

The government asks us to look at the images and find their obscene nature is plain, and therefore appellant was not prejudiced by the findings. We reject the government's invitation for us to answer these questions *ex post*. After all, that is what trials are for.

Likewise, appellant was deprived of the opportunity to argue or present evidence the images did not depict what appears to be minors. If every image of an actual minor was also an image of what appears to be a minor, we would be tempted to follow the dissent's reasoning. However, this is not the case. Not all images of

---

[4] Were we to assume the variance was not fatal as the dissent argues, this assumption would just raise a new issue. The entire defense case hinged on the government's alleged inability to prove the images were of actual minors. If the defense's trial strategy did not present any defense as a matter of law, then we merely have to address the subsequent issue of whether counsel were ineffective when they presented a defense which was not actually a defense.

minors appear to be those of minors. Similarly, not all images that appear to be minors are of actual minors.

In *Treat*, our superior court addressed a variance problem. The accused in *Treat* was found guilty of missing the movement of a plane, albeit a different plane than originally alleged. The CAAF found the variance was not prejudicial because the defense's theory of the case was the accused had been kidnapped by Russians—a defense that did not depend on the tail number on the plane. *Treat*, 73 M.J. at 333. By contrast in this case, the variance in the announced findings was precisely the difference on which the accused based his entire case.

In short, there are many ways to skin this cat, but ultimately, we arrive at the same result: a dead cat. Whether appellant was acquitted of the offense, whether the findings represented a material variance, or whether appellant was deprived of notice and due process as to what he must defend against, the findings of guilt cannot stand.

## CONCLUSION

The findings of guilty and the sentence are set aside and DISMISSED. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings and sentence set aside by this decision, are ordered restored. See UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge MULLIGAN concurs in Part B and in the result.

FEBBO, Judge, dissenting:

I respectfully dissent.

Unlike my colleagues, I do not believe the military judge's findings constitute a fatal variance. Nor do I believe his grammatical editing of the specification constitutes an acquittal of the excepted language. The military judge's actions do not change the nature of the offense. The government charged appellant with possession of child pornography, and the military judge convicted appellant of possession of child pornography. The military judge, after hearing the evidence presented as the trier of fact, made exceptions and substitutions, albeit inartfully, to the child pornography charge.

Contrary to my colleagues, I do not find we are confronted on appeal with only a choice between finding a fatal variance or ineffective assistance of counsel. Appellant's defense counsel sought to exclude appellant's statement to U.S. Army Criminal Investigation Command (CID) and challenged both the digital forensic exam (DFE) and the authenticity of the images. Overall, the government's evidence

of appellant's knowing and wrongful possession of child pornography, including appellant's statement to CID and the DFE, was overwhelming. "[I]n any case in which the evidence is overwhelming, the choice as to which course of defense is best pursued is quintessentially a tactical one, not to be second guessed under *Strickland*." *Hunt v. Smith*, 856 F. Supp. 251, 257 (D. Md. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Therefore, my disagreement with the majority opinion is focused on the lack of a fatal variance in the military judge's findings.

*Argument Presented at Trial on Variance and Military Judge's Ruling*

The government had six special agents testify at trial about the National Center for Missing and Exploited Children (NCMEC) notification of suspected child pornography, appellant's statement, collection of the digital images of suspected child pornography, the DFE, and chain of custody. These digital images were the basis for the child pornography charge and were admitted at trial.

Other than the pictures themselves, the government did not introduce evidence in the form of an expert opinion of the ages of the minors in the digital images or a NCMEC report that the images were previously identified as a known minor. At the close of the government's case on findings, appellant argued there was no medical or forensic evidence presented by the government the images were of actual minors. Therefore, appellant asserted the government failed to meet its burden of proof. Appellant's other claims included: the images collected could have been different than those collected by CID and that the hash values could be different; it was more serious for an accused to possess child pornography of actual minors; the images were not of actual minors; and a variance would substantially change the nature of the offense since it would add an "element" of obscenity. Furthermore, by implication, the government would have a lower burden to prove the digital images were obscene visual depictions of what appears to be minors. Appellant asserted the defense was prejudiced since the defense relied on the government's decision to charge images of actual minors. Appellant stated the images could be "borderline" constitutionally protected. Without addressing specifics, appellant generally argued that the defense was not able to adequately prepare for trial or defend against the charges. Appellant conceded to the military judge no additional evidence would need to be introduced for the military judge to make a determination if they were obscene. The appellant did not make a motion for a finding of not guilty under R.C.M. 917.

The government countered appellant knowingly and wrongfully viewed images the appellant believed to be minors. Furthermore, the images depicted actual minors and the minors in the images looked, by all accounts, to be under the age of eighteen. Neither party argued a theory of virtual children.

After his findings, the military judge ruled the government could have been more precise in charging, but the exceptions and substitutions did not create a fatal variance under R.C.M. 918(a)(1).  He rejected the defense's objections to the findings:  the military judge stated the variance was not material; the exceptions and substitutions did not change the nature of the offense; the gravamen of the offense remained the same (possession of child pornography); appellant was charged with possessing child pornography and was convicted of possessing child pornography; and the variance did not change the nature of the offense or increase the maximum punishment of the offense.  The military judge concluded possession of what appears to be minors was "either equally or less serious than possessing images of actual minors."[1]

*Did the Military Judge Acquit Appellant?*

"If an error was made in the announcement of the findings of the court-martial, the error may be corrected by a new announcement in accordance with this rule. The error must be discovered and the new announcement made before the final adjournment of the court-martial in the case." R.C.M. 922(d).  A military judge can clarify an ambiguity in the findings by making a "clear statement on the record as to which alleged incident formed the basis of the conviction." United States v. *Wilson*, 67 M.J. 432, 428 (C.A.A.F. 2009) (internal citation omitted); *see generally United States v. Kulathungam,* 54 M.J. 386 (2001).  "Inaccuracies in a verdict have been held to be immaterial if the intention is evident from the record." *United States v. Johnson*, 22 M.J. 945, 946 (A.C.M.R. 1986) (internal citation omitted).

The announcement of a verdict "is sufficient if it decides the questions in issue in such a way as to enable the court intelligently to base judgment thereon and can form the basis for a bar to subsequent prosecution for the same offense." *United States v. Dilday*, 47 C.M.R. 172, 173 (A.C.M.R. 1973). "[A] verdict must be certain and convey a definite meaning free from any ambiguity, and although defective in form, if it conveys the manifest intention of the jury, when viewed as a whole, minor irregularities constitute no grounds for reversal." *Id*. (internal citations omitted); *United States v. Pena*, 11 M.J. 509 (N.C.M.R. 1981) ("It is well settled that not every departure from established trial procedure constitutes reversible error.").

---

[1] Under Article 134, UCMJ, the maximum punishment for possession of child pornography of images of "minors" or "what appears to be minors" is exactly the same (dishonorable discharge, forfeiture of all pay and allowances, and confinement for ten years).   I would find such an erroneous statement about the seriousness of the offense by the military judge to be harmless.

HADLEY—ARMY 20150766

In appellant's case, in accordance with R.C.M. 918, the military judge made exceptions and substitutions[2] of what is defined as "child pornography" under Article 134, UCMJ. In my opinion, the military judge did not find the appellant not guilty of the specification and charge of possession of child pornography before finding him guilty of possession of child pornography. The military judge, after being presented the evidence at trial, found appellant knowingly and wrongfully possessed child pornography under the alternative definition of child pornography contained in the explanation of Article 134, UCMJ.

Similarly, the military judge did not find, as the majority suggests, that appellant did not possess any digital images. Contrary to the majority's view, I find when the military judge found appellant guilty "except the words 'digital images of'" and in the same breath substituted "obscene digital images of what appears to be," his findings of guilty were not an acquittal of the words "digital images of." Instead, the military judge contemporaneously announced appellant was guilty of possession of "obscene digital images of what appears to be a minor" engaging in sexually explicit conduct. The military judge properly stated he found appellant guilty of the specification and charge, immediately after announcing the exceptions and substitutions for the digital images. Under R.C.M. 922, if there is an error in the findings by a military judge, the error may be corrected before final adjournment. Indeed, the military judge made special findings as an appellate exhibit. In those special findings, the military judge described in detail the fourteen images charged as child pornography. He found seven of those fourteen images constitute child pornography as each of them contain "a *minor . . .* engaging in sexually explicit conduct." (emphasis added).

Even if there was a technical error in the military judge's announcement of findings through exceptions and substitutions, the error was not prejudicial to the substantial rights of the appellant. UCMJ art. 59(a).

---

[2] A military judge or court members may enter findings by exceptions and substitutions to "an offense necessarily included in the offense charged." Article 79, UCMJ; R.C.M. 918(a)(1). R.C.M. 918 allows for "exception and substitutions." However, findings by exceptions and substitutions may not "substantially change the nature of the offense" charged. R.C.M. 918(a)(1). In *United States v. Trew*, 68 M.J. 364 (C.A.A.F. 2010), the trial counsel asked for clarification of the findings from the military judge. In *Trew*, the CAAF applying *United States v. Walters*, 58 M.J. 391, (C.A.A.F. 2003) and *United States v. Seider*, 60 M.J. 36 (C.A.A.F. 2004), found the military judge's answer modified the findings and created an ambiguity.

*Did the Military Judge Create a Fatal Variance?*

The military judge's exceptions and substitutions did not increase appellant's punishment, did not increase the seriousness of the offense, and double jeopardy attached. Appellant is not exposed to the risk of another prosecution for the same offense. Appellant contends the military judge altered the elements the government needed to prove for possession of child pornography. However, the elements were not altered by the military judge's findings. The appellant was on notice of the charge of child pornography and knew the images were actual minors or what appeared to be minors.

Around February 2015, the NCMEC reported three suspected images of child pornography from an internet protocol (IP) address located on Fort Riley. The IP address belonged to appellant.

In March 2015, as part of the criminal investigation, appellant made a detailed sworn statement to a Special Agent (SA) from CID. The government admitted that statement as evidence at trial. Appellant followed blogs that included themes of "incest" and "teens." Using the search term, "teen," he also used the internet to search for girls "that were borderline [eighteen years old]." He explained "borderline," as looking young. Appellant's searches were not based on a determination if the images depicted actual minors. He used blogs and a messenger service to share and receive pornographic images. Appellant admitted to receiving and downloading approximately twelve images of "girls between that ages of [ten] and [seventeen] naked or barely clothed." He believed these images were of girls under eighteen years old. He also viewed around twenty other images of girls he knew to be under the age of eighteen but did not download the images on his computer. Appellant thought the youngest girl was under ten years old and was pictured lying naked on a bed. While messaging other people about incest, they would send him pictures of girls that were under the age of eighteen. He also shared the naked images of minors since the person asked for "pictures of girls that looked younger." Appellant knew these images were "inappropriate" and he knew it was wrong to view naked children under the age of eighteen. CID seized and conducted a DFE of appellant's computer. Based on the DFE, CID located and identified fourteen digital images that were suspected child pornography on that computer.

Child pornography under Article 134, UCMJ proscribes possession of images of child pornography involving actual minors and images of what appears to be minors. Images of "what appears to be minors" are indistinguishable from images of "actual minors" and do not require additional proof to be presented to the fact finder beyond the images themselves. Appellant was not prejudiced by the variance nor was appellant unable to adequately prepare for trial. *United States v. Finch*, 64 M.J. 118 (C.A.A.F. 2006).

10

Prior to the President specifically proscribing possession of child pornography under Article 134, UCMJ, the government charged possession of child pornography under federal statutes, such as 18 U.S.C. § 2256(1), or as defined by 18 U.S.C. § 2256(8). The Article 134, UCMJ, offense for possession of child pornography has only two elements. In addition to the terminal element of Article 134 (prejudice to good order and discipline or bringing discredit upon the armed forces) the government must establish that an accused, "knowingly and wrongfully possessed child pornography." There is no separate offense under Article 134, UCMJ, for possession of child pornography of actual minors as opposed to what appears to be minors engaged in sexually explicit conduct. There is no difference in the maximum punishment between the alternate ways of proving possession of child pornography. Instead, Article 134, UCMJ, provides alternative ways of proving the criminal nature of the charged misconduct of possessing child pornography.[3]

Appellant argues that the government was alleviated from proving possession of child pornography of actual minors and only had to prove the images were obscene. At trial and in appellant's brief on appeal, the term "obscene" is alternatively argued by appellant as an additional *element* that prejudiced appellant by having to disprove the images were obscene or alternatively lowered the government's burden of proof to prove possession of child pornography. It is neither. The burden of proof never shifted to appellant to disprove obscenity nor was the bar lowered at trial for the government's burden to prove possession of child pornography. "Obscene" is not an element of child pornography; it is a fact necessary for the government to prove possession of child pornography when the image is indistinguishable from that of a minor and the actual identity or age is not known.

Mere possession of an "obscene" image of "what appears to be a minor" does not establish an offense of "child pornography" under Article 134, UCMJ. Regardless if the image is of an "actual minor" or an "obscene image of what appears to be a minor," the government still has to prove all the material facts to establish possession of child pornography. The CAAF in *United States v. Blouin,* 74 M.J. 247 (C.A.A.F. 2015), found that child pornography involving digital images

---

[3] For example, in determining whether a military judge has given proper panel instructions, "the crux of the issue is whether a fact constitutes an element of the crime charged, or a method of committing it." *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007). "In federal criminal cases, the requirement for juror unanimity applies only to elements of the offense. *Richardson v. United States,* 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999) (stating that a 'federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element')." *Brown*, 65 M.J. at 359.

indistinguishable from actual minors had a "*more onerous*" requirement to prove the images were both graphic[4] and lascivious under 18 U.S.C. § 2256(8)(B). *Id*. at 250. (emphasis added).

The question of whether an image is obscene is a question of fact. *Manual for Courts-Martial, United States* [hereinafter *MCM*], Part IV, ¶ 94(c) (2012 ed.) ("Whether something is obscene is a question of fact. 'Obscene' is synonymous with 'indecent' as the latter is defined in [indecent language]. The matter must violate community standards of decency or obscenity and must go beyond customary limits of expression."). *See United States v. Baker*, 57 M.J. 330, 339 (C.A.A.F. 2002) (applying "military community" standard); *United States v. Hullett*, 40 M.J. 189, 191 (C.M.A. 1994); *United States v. Gallo*, 53 M.J. 556, 568 (A.F. Ct. Crim. App. 2000); *United States v. Dyer*, 22 M.J. 578, 582-83 (A.C.M.R. 1986). At trial, appellant's defense counsel agreed with the military judge that the military judge could determine if the images were obscene without any additional evidence.

The fourteen images depicted naked or partially naked females. Based on the size of the minors' bodies and limbs, the appearance of the minors' faces, and the development of the breasts and pubic areas, all fourteen images by all accounts appear to be minors. Several of the pictures show the minors engaged in sexually explicit conduct. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) and *United States v. Roderick*, 62 M.J. 425, 430 (C.A.A.F. 2006). These included images depicting totally nude or partially nude minors with their legs spread and exposing their genitalia. Several of the images depicted totally nude minors wearing bras, garters, high heels, or panty hose with their legs spread apart and exposing their genitalia. One of the pictures depicted a minor with her tongue touching the breast of another minor. The focal point of several of the pictures was the minor's genitalia. One image was of a totally nude minor, with her legs spread, and her fingers touching her genitalia. One image showed a very young minor, unclothed below the waist, standing waist high to totally nude adult male and performing oral sex on the male whose penis is visible in the image.

Based on appellant's sworn statement, appellant knowingly possessed the digital images and knew his possession was wrongful. Appellant also admitted that he sought digital images of minors and "borderline" minors engaged in sexually explicit conduct and had knowledge the images appeared to be minors. Appellant was not prejudiced by the government's charging of actual minors and the military judge's exceptions and substitutions to the specification. The seven images, as described above and found to be child pornography in the military judge's special findings, are not constitutionally protected. Nor is there a reasonable argument that

---

[4] Article 134, UCMJ, uses the term "obscene" instead of "graphic."

they are not obscene. No additional evidence was required to establish that fact. In short, the military judge did not need to add the word "obscene" to his findings.

At trial, appellant argued the government did not prove the digital images were actual minors. Under both theories, the government must prove that the images depict minors, or what appeared to be minors, engaged in sexually explicit conduct. The digital image of what appears to be a minor must be indistinguishable from an actual minor. Under either alternative, an accused would have the same defense that the images did not depict a minor under the age of eighteen years. Applying *Dost*, an obscene image would not establish proof of child pornography, if the images did not depict lascivious exhibition of the genital or pubic area. 636 F. Supp. at 832. The different definitions of child pornography in the *MCM* do not lower the burden of proof for the government.

Despite citing the government's lack of proof of child pornography, appellant did not make a motion for a finding of not guilty under R.C.M. 917. Appellant cites no specific case that precluded the military judge from making exceptions and substitutions when the government charges images of an actual minor and the trier of fact finds that the images are "what appeared to be minors" engaged in sexually explicit conduct. While the defense did argue there was a lack of evidence proving the images were actual minors, the defense theory was not channeled to disapprove that he knowingly and wrongfully possessed child pornography. Appellant does not identify a different trial strategy the defense would have pursued besides the argument presented to the military judge the government did not prove "the person knows that that [sic] is an actual child or the person is identified somehow forensically or medically to be a person—a minor."

However, in *United States v. Cendejas*, the CAAF concluded in a child pornography case, the government is not required to present additional evidence or expert testimony to meet the burden of proof to show the images depicted real children and the factfinder "can make a determination that an actual child was used to produce the images in question based upon a review of the images alone." 62 M.J. 334, 338 (C.A.A.F. 206) (citing *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004). *See also, United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003) ("Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge."); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) (holding that images alone were sufficient to prove that production of charged images involved use of a real minor); *United States v. Fuller*, 77 Fed. Appx. 371, 379 (6th Cir. 2003) (unpub.) (jury could draw its own conclusions from viewing images).

If additional evidence or an expert is not required to show the images depicted actual minors, the government similarly did not need to present an expert to prove

that the images depicted "what appears to be a minor." As reflected in the special findings in appellant's case, the military judge was able to assess the size of the minor's bodies and limbs, the appearance of the minor's faces, and the development of the female's breasts and pubic area to determine the images depicted what appeared to be minors engaging in sexually explicit conduct. The seven digital images that appellant knowingly and wrongfully possessed depicted minors, or what appears to be minors, engaged in sexually explicit conduct to include oral sodomy.

Accordingly, I do not find a fatal variance in the specification nor prejudice to appellant. After reviewing the record of trial, and considering the briefs and oral arguments, I find the military judge did not error in finding the digital images were child pornography of what appeared to be minors engaged in sexually explicit conduct. The seven digital images are indistinguishable from actual minors. I find no material difference between the specification as alleged and the evidence introduced at trial. The appellant was certainly on notice of what he was charged with and what he needed to defend himself against. I find the evidence factually and legally sufficient to support the charge and specification of possession of child pornography and would affirm the findings and sentence as approved by the convening authority.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court