**UNITED STATES, Appellee,**

v.

**Private E2 Jay M. HILOW, 261 59 8700, United States Army, Appellant.**

**ACMR 8601499.**

U.S. Army Court of Military Review.

12 Oct. 1989.

642

For Appellant: Captain Ralph L. Gonzalez, JAGC (argued); Lieutenant Colonel Russell S. Estey, JAGC, Major Marion E. Winter, JAGC (on brief).

For Appellee: Major Gary L. Hausken, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC (on brief).

Before the Court sitting En Banc.

1. *United States v. Hilow*, 27 M.J. 846 (A.C.M.R. 1989), *vacated and reh'g en banc ordered, publication withdrawn* (A.C.M.R. 3 Feb. 1989) (order of the court en banc) (unpub.).

2. Although allegations of unlawful command influence were originally raised in this case, our

OPINION OF THE COURT ON RECONSIDERATION[1]

MYERS, Senior Judge:

Pursuant to his pleas, appellant was convicted by a military judge sitting as a general court-martial of two specifications of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. IV 1986) [hereinafter UCMJ]. His sentence to a bad-conduct discharge, confinement for four months, total forfeitures, and reduction to Private E1 was approved by the convening authority.

Appellant alleges that he was denied his right to a fair and impartial sentence proceeding because the nomination and selection of the members detailed to his court-martial were improper.[2] In support of that assertion, appellant submitted the affidavit of Captain (CPT) David Fierst (attached hereto as Appendix 1). CPT Fierst, then the division deputy adjutant general, alleged, *inter alia,* that he was directed by members of the staff judge advocate's office to "select nominees [for court-martial panels] who were commanders and supporters of a command policy of hard discipline."

Based on appellant's allegations, a limited hearing in accordance with *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), was ordered.[3] The hearing judge found that there was no evidence to support CPT Fierst's allegation that "the [staff judge advocate] wanted [him] to select nominees who were commanders and supporters of a command policy of hard discipline." The judge found, however, that CPT Fierst himself did select nominees whom he perceived to fit this criteria. CPT Fierst submitted a list of thirty persons to the staff judge advocate. The latter combined that list with lists of nominees from two subordinate jurisdictions and submitted the combined list, containing forty-

review of the record does not reveal any evidence to support those allegations.

3. *United States v. Hilow*, ACMR 8601499 (A.C.M.R. 16 December 1987) (unpub.).

seven names, to the convening authority. In addition, the staff judge advocate provided an "alpha roster" containing the names of all military personnel in the jurisdiction. Of the thirty people selected by the convening authority, nineteen were from CPT Fierst's list. The convening authority wrote in two names that were not on the list submitted to him, although it is not clear whether he selected those names from the "alpha roster." In the appellant's case, the convening order contained the names of six people selected from CPT Fierst's list. If the case were tried by officers alone, three of the seven members would have been from CPT Fierst's list. Had the court included officers and enlisted members, four of the seven members would have been from CPT Fierst's list. The military judge further found that the convening authority received correct advice from the staff judge advocate and utilized the proper criteria pursuant to Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2),[4] in making his selections. (*See* the military judge's Findings of Fact, attached hereto as Appendix 2).

## I

■ Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 912(b)(1) requires that a motion challenging the selection of members be made "[b]efore the examination of members ... or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier." Waiver is predicated upon a failure to make a timely motion. R.C.M. 912(b)(3). It is clear in this case that CPT Fierst's procedure for selecting nominees was discovered after trial and only after CPT Fierst became

concerned that "military justice was not evenly dealt with" in the command and voluntarily came forward. Under those circumstances, we find that the challenged selection procedure had not been discovered nor could it reasonably have been discovered by the exercise of diligence prior to the conclusion of appellant's trial. *United States v. Smith*, 27 M.J. 242 (C.M.A.1988). Appellant raised the issue in his post-trial submission to the convening authority, but his request for relief was denied. Thus, the issue was preserved for appeal.

## II

■ Selection of court members designed or intended to "achieve a particular result as to findings or sentence" is clearly prohibited. *Smith*, 27 M.J. at 250 (quoting *United States v. McClain*, 22 M.J. 124, 132 (C.M.A.1986)). It is undisputed that the procedure employed by CPT Fierst in nominating "supporters of a command policy of hard discipline" violates the criteria applicable to a convening authority when selecting members for a court-martial. *See McClain*, 22 M.J. at 132 (selection of court members who will adjudge heavy sentences is not a basis for selection authorized by Article 25(d)(2), UCMJ). However, CPT Fierst was not the convening authority and, in this case, the convening authority properly applied Article 25, UCMJ, criteria when selecting the members even though, unbeknown to him, he was using a "tainted" list. Previous cases in this area have involved the use or imputed use of improper criteria by the convening authority or the staff judge advocate, or both.[5] However, we have found no cases which address the question whether an attempt to "stack" the court by a junior subordinate will taint the convening authority's selec-

---

**4.** Article 25(d)(2), UCMJ, requires the convening authority to detail as members of courts-martial such members of the armed forces as, in his opinion, "are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."

**5.** *See McClain*, 22 M.J. at 132 (improper advice provided by the staff judge advocate was imputed to the convening authority where action of the convening authority reflected reliance upon the advice); *United States v. Greene*, 43 C.M.R.

72 (C.M.A.1970) (improper selection found where staff judge advocate had recommended only senior officers be selected and only senior officers were selected); *United States v. Hedges*, 29 C.M.R. 458 (C.M.A.1960) (where seven of nine members of the court had primary duty assignments involving crime prevention, detection, or control, the appearance of a handpicked court favoring the government was so great as to require reversal).

tion of court members when the convening authority, acting upon correct advice from the staff judge advocate, applies the proper criteria in his selection. Under the circumstances of this case, we find that CPT Fierst's attempt to "stack" the court did not invalidate the convening authority's selection.

◼ Appellant argues that the convening authority must, of necessity, rely on the recommendations of his subordinates when selecting court members and that based on *McClain*, any errors or improprieties would, *ipso facto*, carry over to and infect the actions of the convening authority. We agree that the incorrect advice of the staff judge advocate [6] or the actions of the prosecutorial personnel of the staff judge advocate's office [7] contaminate the actions of the convening authority. However, no court has created a *per se* rule which would impute to the convening authority the improper motives or actions of anyone farther removed from the convening authority than the personnel of the staff judge advocate's office. When determining whether a subordinate's conduct taints a selection process, the facts of each case must be examined to ascertain whether the convening authority did in fact utilize improper criteria or apply faulty advice in the selection of court members. *Cf. McClain*, 22 M.J. at 133 (Cox, J., concurring in result) (absent evidence to the contrary, the court assumed the convening authority followed the improper advice of the staff judge advocate); *Daigle*, 1 M.J. at 141 (the Court of Military Appeals reviewed the facts to determine whether the convening authority had received advice regarding the proper criteria for selecting court members).

◼ In *Smith* and *McClain* improper criteria were deliberately utilized by the convening authority or the staff judge advocate which tainted the entire membership of the court. However, in the instant case, neither the convening authority nor the staff judge advocate acted with improper intent in selecting court members or were aware of the improprieties of CPT Fierst.[8] CPT Fierst routed his list of nominees through the command sergeant major and the assistant division commander before forwarding it to the staff judge advocate for review and consolidation with the two other lists. Those officials reviewed the list, commented thereon and, having no knowledge of CPT Fierst's actions and noticing nothing facially improper, processed the list in the normal course of their responsibilities. Thus, contrary to the situations in *Smith, McClain, et al.*, CPT Fierst's list was filtered through three levels of command and staff review before reaching the convening authority, the final review having been conducted by the staff judge advocate, who, as we have already noted, correctly advised him in the matter. The convening authority himself saw nothing amiss. The fact that he wrote in the names of two people not on the list clearly shows that he did not blindly "rubber-stamp" the "tainted" list presented to him but instead, using the staff work of his subordinates merely as a guide, exercised his own discretion and utilized his own personal knowledge of the members of his command in making his selections, as he is empowered and, indeed, required to do under Article 25, UCMJ.

Appellant argues that "we [should be] concerned with intent, rather than impact." *McClain*, 22 M.J. at 131. We agree. We are deeply concerned with intent—the intent of the convening authority and the

6. *See McClain*, 22 M.J. at 124; *Greene*, 43 C.M.R. at 78 (C.M.A.1960).

7. *Smith*, 27 M.J. at 242; *United States v. Daigle*, 1 M.J. 139 (C.M.A.1975).

8. Since the staff judge advocate is the convening authority's principal legal advisor and the convening authority must, by law, receive legal advice from his staff judge advocate before referring a case to a general court-martial, Article 34, UCMJ, 10 U.S.C. § 834, it logically follows that any errors or improprieties on the part of the staff judge advocate will carry over to and taint the action of the convening authority. Had the staff judge advocate made nominations and advised the convening authority with an intent to achieve a certain result, that is, court members who are hard-liners, that improper motive would have been imputed to the convening authority regardless of whether he had applied the proper selection criteria under Article 25, UCMJ. *McClain*, 22 M.J. at 132.

staff judge advocate. In this case, as hereinbefore discussed, the convening authority and the staff judge advocate both acted properly and in good faith. We find, therefore, that any taint attaching to CPT Fierst's list was dissipated by the subsequent selection process and that the panel to which appellant's case was referred was properly selected in compliance with Article 25, UCMJ.

We have considered the other errors asserted by the appellant and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judges GILLEY, CARMICHAEL and GIUNTINI concur.[9]

---

9. Senior Judges Kucera and Foreman, and Judges Johnson, Kane, Varo, and Neurauter did not participate in this decision.

## APPENDIX 1

**SWORN STATEMENT**

For use of this form, see AR 190–45; the proponent agency is Office of The Deputy Chief of Staff for Personnel.

| LOCATION | DATE | TIME | FILE NUMBER |
|---|---|---|---|
| GARLSTEDT, FRG | | | |

| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. | GRADE/STATUS |
|---|---|---|
| FIERST, DAVID J. | 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 | OPT/O3 |

ORGANIZATION OR ADDRESS

HHC, 2AD (FWD) APO NEW YORK 09355.

I, **CPT DAVID J. FIERST**, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I was the Deputy Adjutant General for the 2nd Armored Division (FWD) at Garlstedt, FRG from about 15 October 1985 until October 1986. During July 1986, I was involved with the selection of court-martial panel members for upcoming court-martial panels for the 2nd Armored Division(FWD). I recall seeing LTC Dodson one day in the hallway of the Headquarters building where the subject of selecting court-martial panel members came up. At that time I was with Major Berger, AG of the 2nd Armored Division. It was explained to us by LTC Dodson how this would be accomplished. LTC Dodson wanted the Adjutant General's Office to prepare a listing or roster of possible court member nominees. Major Berger indicated to me that this would be my project.

As I worked on preparing this list, I would go see or call either LTC Dodson or Major Lause, the Deputy Staff Judge Advocate for further guidance. In all, I would say that the subject of criteria for selecting court members came up between myself and the SJA's Office three or four times. On one occasion, I went to see Major Lause in his office to discuss the criteria for selection and this discussion was conducted behind closed doors. It became clear to me, although never specifically stated, the SJA wanted me to select nominees who were commanders and supporters of a command policy of hard discipline. I ultimately selected nominees who were commanders and/or who I believed were hard liners for discipline. I nominated a few First Lieutenants on this list, but I was told by the Assistant Division Commander to remove them as they lacked experience, according to the criteria given to me by the SJA and DSJA. I never nominated a soldier who was less than a Sergeant First Class(E-7).

This community is a comparitively small community with only about 350 officers. Therefore, I was rather familiar with the reputation and attitudes of the commanders and officers within the command. I was told that when the Convening Authority approved the nominees I needed to ensure that a roster of all assigned soldiers was available for the Convening Authority to choose from. It was explained to me that by providing this list of all soldiers, it would give the appearance that no particular group was excluded, or that no one criteria was used for selection, ie., rank or commanders.

Throughout this process, I had the perception that I was not to discuss this matter with anyone, and that what I was doing was somehow secretive, or not totally above board. I became even more concerned when I heard about 1LT Joel Wall's court-martial, and the feeling that I had that he was getting railroaded by not having a fair and impartial jury hear his case. I sensed from conversations around the command that he would not get a fair trial because he was an

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | DJF | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF___ TAKEN AT___DATED___CONTINUED."*
*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND BE INITIALED AS "PAGE___OF___PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.*

DA FORM 2823, JUL 72   SUPERSEDES DA FORM 2823, 1 JAN 68, WHICH WILL BE USED.

STATEMENT (Continued)
officer. As I further reflected on this matter, I became concerned that mili-
tary justice was not evenly dealt with in this command and I wanted no part of
this manipulation of military justice.

*End of Statement*

**AFFIDAVIT**

I, David J. Fierst HAVE READ OR HAVE HAD READ TO ME THIS STATE-
MENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT
MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT
OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

*David J. Fierst*
(Signature of Person Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law
to administer oaths, this 23 day of DECEMBER, 1986
at GARLSTEDT, FRG

ORGANIZATION OR ADDRESS

*Paula C. Jura*
(Signature of Person Administering Oath)

PAULA C. JURA CPT JA
(Typed Name of Person Administering Oath)

ORGANIZATION OR ADDRESS

10 USC 936
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT DJF

PAGE 2 OF 2 PAGES

## APPENDIX 2

## FINDINGS OF FACT

1. During July 1986, the Staff Judge Advocate (SJA) for 2d Armored Division (Forward), requested the Adjutant General (AG) provide a list of court member nominees to be used by the convening authority (CA) in selecting new court member panels (See AE XII). CPT Fierst, the Assistant AG, was the action officer for this task.

2. The SJA and Deputy Staff Judge Advocate (DSJA) gave CPT Fierst both written and oral guidance on how this list was to be created. The advice given to CPT Fierst by both the SJA and DSJA comported with

Art. 25(d)(2), UCMJ. This advice specifically informed CPT Fierst that he should recommend people who were best qualified for the duty by reason of age, education, training experience, length of service, and judicial temperament. AE XIII is part of the written advice used by CPT Fierst. Neither the SJA, DSJA, or anyone else specifically directed or requested that CPT Fierst nominate people who were commanders or hard-liners on military justice. The SJA, in his oral advice to CPT Fierst, did say that commanders were not excluded from nomination. The SJA made this comment so that CPT Fierst would understand that this list of nominees was different from selecting people for a duty roster. CPT Fierst was also requested by either the SJA or the DSJA to provide a roster of all persons assigned to the 2d AD (FWD) (an Alpha roster). This Alpha roster was to be used in case the CA wanted to consider a person for court-martial duty who was not listed as a nominee. In discussing the Alpha roster, the DSJA told CPT Fierst that this roster would be used to insure the selection process was conducted in a manner which gives the appearance of fairness. The intent of this comment was that this Alpha roster would be available in case the CA wanted to consider someone other than the listed nominees for court-martial duty. However, CPT Fierst construed the comment to mean that the Alpha roster was merely to be used so that an unfair process would give a false fair appearance.

3. Despite receiving correct advice, CPT Fierst felt that he was supposed to select commanders or persons who would be hard-liners. CPT Fierst reached this conclusion because he felt that the language in Art. 25(d)(2), UCMJ really means that. CPT Fierst created the list of nominees for the 2nd AD (FWD) (AEVIII), selecting people who were either commanders or who he perceived were supporters of hard discipline.

4. The list of nominees was then routed through the Command Sergeant Major, CSM Toomler and the Assistant Division Commander (ADC), COL Baucum. The CSM told CPT Fierst that two people on the list, 1SG Murphy and CSM Hutton, were not team players. However, both names stayed on the list. The ADC told CPT Fierst that he felt the lieutenants on the list lacked the requisite experience to serve as court members. (See AE XIV). However, the lieutenants remained on the list and COL Baucum's view on lieutenants was never presented to the CA.

5. Once the list of nominees (AE XIII) was presented to the SJA office, it was incorporated into a larger list of nominees comprising all units under the CA's jurisdiction. AE IX is the complete list of nominees prepared by the SJA office. 47 names are on this list. On or about 6 August 1986, the SJA presented to the CA AE IX and AE X along with an Alpha roster so that the CA could select new court member panels. The oral and written advice given to the CA at that time by the SJA comported with the criteria found in Art. 25(d)(2), UCMJ.

6. The CA then selected the persons found on AE IX who have a check placed by their name for duty as court members. The CA wrote in the names of two (2) persons who were not listed on AE IX to be court members. The CA selected persons who, in his opinion, best met the criteria set out in Art. 25(d)(2), UCMJ. The CA did not intentionally select persons merely because they were commanders. The CA did not purposely select persons because of any perception on his part that these people were hard-liners.

7. Of the 30 persons selected by the CA for court-martial duty, 19 were people who had been on the list created by CPT Fierst. The list submitted by CPT Fierst contained 30 names. In the case of *U.S. v. Hilow*, the convening order (AE XI) shows 6 people who were on CPT Fierst's list. If the case were tried by officers alone, 3 of the 7 members would be from CPT Fierst's list. If the case was tried by officers and enlisted, 4 of the 7 members would be from CPT Fierst's list.

8. There was no evidence to suggest that 2d AD (FWD) was experiencing any unusual military justice problems or any un-

usual problems with court-martial results. There was insufficient evidence to suggest that the CA automatically excluded soldiers of any particular rank from duty as court members.

9. In summary, CPT Fierst got the correct advice from the SJA and DSJA, yet he misconstrued this advice and felt his duty was to select commanders or hard-liners. The list submitted by him consisted of people who were either commanders or people he considered to be hard-liners. The CA received and applied the correct advice pursuant to Art. 25(d)(2), UCMJ for court member selection. His intent, when selecting court members was proper and comported fully with Art 25, UCMJ. The CA used a list of nominees to make his selection in which 30 of the 47 names came from CPT Fierst. Of the 30 people selected by the CA, 19 came from CPT Fierst's list. Of the 7 people who would be on any court member panel for PV2 Hilow's case, either 4 or 3 would be from CPT Fierst's list, depending on the type court selected. (WCU)

10. Concerning the 5 lettered questions posed by the Army Court of Military Review in its Memorandum Opinion dated 16 December 1987 in *U.S. v. Hilow,* the following answers are given:

a. Yes. CPT Fierst, the assistant AG, prepared a list of court member nominees.

b. No. Neither the SJA, DSJA, or anyone else told CPT Fierst to select nominees who were commanders and supporters of a command policy of hard discipline. CPT Fierst admitted no one told him this. However, CPT Fierst believed he was supposed to select those types of nominees and did so.

c. No. The ADC made the comment but the Lieutenants remained on the list.

d. A qualified yes. A statement like this was made by the DSJA to CPT Fierst, however, it was intended to mean that by using the Alpha roster the selection process would be fair both in practice and in appearance. CPT Fierst interpreted the comment to mean that the Alpha roster

was only to be used to make an unfair selection process appear fair.

e. Yes. 18 of the 30 court members selected by the CA came from CPT Fierst's list. 6 of the court members on PV2 Hilow's convening order were from CPT Fierst's list. If a court with only officer members had sat, 3 of the 7 members would have been from the list. If a court with officers and enlisted had sat, 4 of the 7 members would have been from the list.

> s/ William L. Wallis
> WILLIAM L. WALLIS
> MAJ, JA
> Military Judge

WERNER, Judge, concurring in the result:

On 16 December 1987, the court remanded this case for a limited hearing to further investigate allegations of improper nomination of members. *See United States v. DuBay,* 37 C.M.R. 411 (C.M.A.1967). On 13 January 1989, a panel of this court affirmed the findings but found that improprieties in the nominating process affected the sentence. The court set aside the sentence and authorized a rehearing. On 3 February 1989, this court, acting *en banc, sua sponte* vacated the decision of 13 January and ordered reconsideration of the case.

The appellant contends that he was denied the right to a fair and impartial sentence proceeding because the nomination and selection of members detailed to his court-martial were improper. In support of his contention, the appellant submitted the affidavit of Captain (CPT) David Fierst, the division deputy adjutant general. *See* Appendix 1. In his affidavit, CPT Fierst maintains that he perceived that the office of the division staff judge advocate wanted him to "select nominees [for courts-martial panels] who were commanders and supporters of a command policy of hard discipline."

On consideration of CPT Fierst's affidavit and other evidence taken at the *DuBay* hearing, the military judge who presided at that hearing entered findings of fact that there was no evidence to support CPT Fierst's perception that "the [staff judge

advocate] wanted [him] to select nominees who were commanders and supporters of a command policy of hard discipline." The military judge further found that the staff judge advocate had correctly advised the convening authority of the lawful, statutory criteria[1] for selecting members and that the convening authority had applied the lawful criteria in making his selections. The military judge did find, however, that CPT Fierst himself had selected nominees according to this impermissible criterion.

CPT Fierst had submitted a list of thirty nominees from the division to the office of the staff judge advocate where it was combined with nominations from other organizations to form a combined list of forty-seven names. This list of forty-seven names and an "alpha roster" listing the names of *all* military personnel in the convening authority's jurisdiction were submitted to the convening authority for consideration in the selection process mandated by Article 25, UCMJ. The "alpha roster" included three hundred and fifty officers and an unspecified number of enlisted personnel.

Of the thirty persons ultimately detailed to courts-martial panels by the convening authority, the names of twenty-eight appeared on the combined list.[2] The names of nineteen others appeared on CPT Fierst's list. Had the appellant elected to be tried by a court-martial composed of officer members, the names of three of the seven officer members detailed to sit as appellant's court would have been taken from CPT Fierst's list of nominees. The

appellant waived a trial with officer members and selected trial by military judge alone.

## I

## Waiver

I find that the appellant's failure to challenge the array at trial constitutes waiver. The Manual for Courts-martial provides for application of the waiver doctrine to the case at bar. R.C.M. 912(b)(3).[3] *Accord United States v. Aho*, 8 M.J. 236, 237 (C.M. A.1980); *United States v. Crawford*, 35 C.M.R. 3, 5–6 (C.M.A.1964). Although the utilization of impermissible or improper criteria by those who make nominations for service on courts-martial "may vitiate the selection process," objection to this type of defect must be made at trial or it is waived. *Crawford*, 35 C.M.R. at 5, 10. In the case at bar, the appellant has not only failed to challenge the array, he explicitly and without reservation waived his right to court-martial by members and requested trial by judge alone. *Cf. United States v. Daigle*, 1 M.J. 139, 142 (C.M.A.1975); *United States v. Greene*, 43 C.M.R. 72, 73 (C.M.A. 1970). I recognize that there are circumstances in which application of the waiver rule is inappropriate. However, I find none of these circumstances present in this case.

## A

Rule 912(b)(3) provides three specific exceptions to the waiver rule, R.C.M. 501(a),[4] 502(a)(2),[5] and 503(a)(2).[6] These exceptions

---

1. UCMJ art. 25.

2. The record is not clear whether these other two individuals were selected from the "alpha roster" or independent of the lists submitted.

3. R.C.M. 912(b), "Challenge of selection of members," provides in pertinent part:

    (1) *Motion.* Before the examination of members [voir dire] ... begins, or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, that party may move to stay the proceedings on the ground that members were selected improperly.

    . . . .

(3) *Waiver.* Failure to make a timely motion under this subsection shall waive the improper selection unless it constitutes a violation of R.C.M. 501(a), 502(a)(1), or 503(a)(2).

4. R.C.M. 501(a)(1) provides that general courts-martial shall be composed of a military judge and not less than five members or a military judge alone. R.C.M. 501(a)(2) provides that special courts-martial shall be composed of (A) not less than three members; (B) a military judge and not less than three members; or (C) a military judge alone. *See* UCMJ art. 25(c)(1).

5. R.C.M. 502(a)(1) provides for selection of members in accordance with the Congressional mandate of Article 25, UCMJ, which requires a convening authority to detail as members those

6. See note 6 on page 651.

are jurisdictional, R.C.M. 201(b)(2),[7] and may not be waived. *See United States v. McClain,* 22 M.J. 124, 127 (C.M.A.1986) (an accused has an absolute right to trial before a properly constituted court with members). *See also United States v. Hudson,* 27 M.J. 734 (A.C.M.R.1988); *United States v. England,* 24 M.J. 816, 817 (A.C.M.R.), *pet. denied,* 25 M.J. 483 (C.M.A.1987). None of these jurisdictional exceptions are applicable to this case.

The court-martial convening order detailed the appropriate number of members required by Article 16, UCMJ, U.S.C. § 816, and R.C.M. 501(a) and the convening authority properly selected the members in accordance with the criteria established by Article 25(d)(2), UCMJ, and R.C.M. 502(a)(1). The court was not convened in violation of Article 25(c)(1), UCMJ, or R.C.M. 503(a)(2) because no request for enlisted members was ever submitted. Defects or improprieties in the nominating process do not fit within the proscriptive language of the Manual and therefore are not jurisdictional impediments that would bar invocation of the waiver rule.

**B**

Nor would I apply the waiver doctrine where the nominating or selection processes violate military due process.[8] For example, it is a violation of due process if a government prosecutor or other partisan government advocate participates in the selection or nominating process.[9] *See, e.g., Smith,* 27 M.J. at 251; *United States v. Crumb,* 10 M.J. 520, 527–28 (A.C.M.R.1980) (Jones, S.J., concurring). A violation of due process may also occur if a convening authority selects members with the intent to influence the outcome of courts-martial. *See, e.g., McClain,* 22 M.J. at 131. Unlike the protagonists in the foregoing cases, CPT Fierst was not a "partisan" government advocate but an administrative functionary whose power to influence the prosecutorial or accusatorial decision making process was extremely limited. His "position and responsibilities" as an assistant adjutant general can hardly be compared to those of the prosecutor and staff judge advocate in *United States v. Smith* and *United States v. McClain.* Hence, his motives and intent in nominating potential members of courts-martial panels cannot be imputed to the convening authority. Nor is this a case where the convening authority was faced with no practical alternative but to appoint improperly nominated members. *See Marsh,* 21 M.J. at 448–49; *United States v. McCall,* 26 M.J. 804 (A.C. M.R.1988). The convening authority con-

best qualified according to age, education, training, experience, length of service, and judicial temperament. *See* UCMJ art. 25(d)(2).

6. R.C.M. 503(a)(2) provides that an enlisted accused may not be tried by a court composed of less than one-third enlisted members if he so requests. *See* UCMJ art. 25(c)(1).

7. R.C.M. 201(b)(2) provides in pertinent part: [F]or a court-martial to have jurisdiction:
. . . .
(2) The court-martial must be composed in accordance with these rules with respect to number and qualifications of its personnel.

8. In *Smith,* 27 M.J. at 251, a case involving prosecutorial participation in the nominating and selection process, the Court of Military Appeals reversed on the basis that an "appearance of evil" attended the conviction which resulted in public suspicion of the court-martial process. We do not believe that our review of a case should be influenced by the mere popularity or unpopularity of trial results. We believe that the "traditional notions of justice and fair play"

standard of a due process analysis provide a more legally sound basis for setting aside a conviction attended by such circumstances. *Cf. United States v. Marsh,* 21 M.J. 445, 450 (C.M. A.), *cert. denied,* 479 U.S. 1016, 107 S.Ct. 666, 93 L.Ed.2d 719 (1986) (the detailing process did not "create an impression which undermines the fairness and integrity of the military-justice system"); *Daigle,* 1 M.J. 139, 140 (C.M.A.1975) ("Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system").

9. Although this does not constitute a *per se* violation of due process, the Government has a heavy burden of demonstrating that the participation "ultimately had no impact on the fairness of the court." *Smith,* 27 M.J. at 251. In *Crumb,* where the trial counsel only recommended selection of replacement members, Senior Judge Jones stated, "It is only through the searching examination at trial of two of the participants in the procedure that I am satisfied that the selection process was fair and without prejudice to the appellant." *Crumb,* 10 M.J. at 528.

sidered not only the thirty nominations of CPT Fierst, but seventeen other nominees and all of the soldiers assigned to his command. This proves that the convening authority exercised personal discretion in selecting the members as he was required to do under Article 25, UCMJ. Consequently, I conclude that appellant was not denied due process.

## C

Finally, an accused may avoid the waiver rule either by showing that a failure to consider his claim will result in a fundamental miscarriage of justice or by demonstrating good cause and actual prejudice. *Cf. Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). Although the cause-and-prejudice standard is not limited at law, two clearly defined circumstances have been identified as meeting the standard: newly discovered evidence not reasonably discoverable by the exercise of due diligence prior to trial, *United States v. Thomas,* 11 M.J. 135 (C.M.A.1981),[10] and ineffective assistance of counsel. *United States v. Howes,* 22 M.J. 704 (A.C.M.R. 1986).

The majority holds the waiver doctrine inapplicable in the instant case. In so holding, they rely on the fact—which I do not dispute—that CPT Fierst's criteria were not discovered until after trial when CPT Fierst volunteered the information. Citing *United States v. Smith,* 27 M.J. 242 (C.M. A.1988), the majority finds that the challenged selection procedure could not have reasonably been discovered by the exercise of due diligence. The majority also relies on the fact that the matter was set forth in a post-trial submission. The majority deems this post-trial submission a request for relief. None of these findings can be supported by the record.

### (1)

The appellant offers no reasonable basis for his failure to timely discover CPT

Fierst's improper motive in choosing divisional nominees and I perceive none. It is apparent from the record that the appellant made no inquiry whatsoever into the nominating processes which attended his case; therefore, I find that the appellant did not exercise due diligence at the time of trial. *See Thomas,* 11 M.J. at 137. The appellant argues in part that the facts of his case as in *Smith,* "demonstrate [that] the discovery of improper nominating procedures are [sic] often fortuitous" and implies that he should be held blameless for not discovering such infirmity. I do not agree. When an accused who is represented by a qualified attorney makes no inquiry whatsoever into the selection and nominating processes, he runs the risk that such ignorance may preclude him from effectively challenging the array. This is no different from one who fails to conduct adequate pretrial discovery in order to challenge the individual court members under R.C.M. 912(f)(1). *See* R.C.M. 912(f)(4). I see no reason to apply a different standard here.

Despite the fact that the appellant neither alleges nor offers evidence that the infirmity could not have been discovered, the majority nevertheless finds, on the basis of *Smith,* that CPT Fierst's role in the nominating process could not have been discovered by the exercise of due diligence. The *Smith* decision affords no support for this conclusion. The facts of the *Smith* case did not require a determination whether the appellate issues had been waived because the issues of that case—court-packing by the convening authority and participation by a partisan government counsel in the process—were not susceptible to application of the waiver doctrine. *See Smith,* 27 M.J. at 251 (Cox, J., concurring).

However, two cases decided by the United States Supreme Court abundantly illustrate the discoverability of such defects and establish clear precedent for applying the doctrine to the facts of the case at bar. In *Shotwell Mfg. Co. v. United States,* 371

---

**10.** R.C.M. 912(b)(1) creates a trigger for the procedural default of R.C.M. 912(b)(3) providing, in effect, for application only at the time

the accused "discovers or should have discovered, by the exercise of diligence, the grounds" for a challenge to the array.

U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357, *reh'g denied,* 372 U.S. 950, 83 S.Ct. 931, 9 L.Ed.2d 975 (1963), the appellants asserted on the basis of newly discovered evidence that the jury commissioner improperly delegated his selection duties to a subordinate, that volunteers were permitted to serve on the juries, and that the clerk of the district court utilized constitutionally deficient criteria in selecting the venire. *Shotwell Mfg. Co.,* 371 U.S. at 361–362, 83 S.Ct. at 460. In that case, as in the case at bar, the appellants argued that the alleged illegalities were "not readily noticeable." *Id.* at 362, 83 S.Ct. at 460. The *Shotwell* Court held that the facts concerning jury selection were open and notorious and "available to the petitioners in the exercise of due diligence before the trial." *Id.* at 363, 83 S.Ct. at 461. That Court further held that the failure to object in a timely manner further required a showing of specific prejudice. *Id.* In *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the holding in *Shotwell* was reaffirmed in the strongest terms. The *Davis* Court held that an allegation of racial discrimination in the composition of a grand jury, a substantial *constitutional* right, was waived by failure to assert the matter at trial. *Davis,* 411 U.S. at 243–45, 93 S.Ct. at 1583–84. The *Davis* Court quoted with approval the District Court's holding that "[n]o reason has been suggested why petitioner or his attorney could not have ascertained all of the facts necessary to present the objection to the court prior to trial." *Id.* at 243, 93 S.Ct. at 1583. The matters now urged by the appellant were no less discoverable than those in *Shotwell* and *Davis.*

Simple pretrial investigation would have revealed CPT Fierst's identity and role in the nominating process. In addition to pretrial investigation, a panoply of discovery vehicles are available to trial defense counsel to ferret out improprieties in the nominating and selecting processes. *See* R.C.M. 701(a)(2)(A); R.C.M. 702. The Manual itself creates the *right* to access the processes underlying the selection of members upon a *de minimis* showing. R.C.M. 912(b)(2).[11]

I can conceive of situations where bad faith on the part of the government could frustrate an accused in his pursuit of information upon which to challenge the array. However, there is neither evidence of record nor allegation that the nominating process in the case at bar was accomplished by some cabal or that there was some conspiracy to insulate the process from defense investigation and judicial review. There is no evidence to suggest that CPT Fierst's participation in the nominating process was anonymous or that his role in the nominating process could not have been discovered. The criteria upon and intent with which he made his nominations were susceptible to inquiry or examination under oath either by pretrial deposition or by examination during pretrial session upon a requisite showing under R.C.M. 912(b)(2).

(2)

I also find that appellant was adequately represented prior to and during trial and that his counsel's failure to discover CPT Fierst's motive does not warrant relief from the waiver rule. Although the infirmity in the nominating process was not discovered prior to trial, appellant's counsel learned about it after trial and before the case was submitted to the convening authority for approval. Assuming that the evidence was newly discovered, the appellant had several options available to him at that point. First, he could have raised the infirmity as an allegation of error affecting the legality of the conviction and sentence. *See* R.C.M. 1105(b)(1). Second, he could have requested the convening authority order a post-trial session for the purpose of inquiring into the legal infirmity. *See*

---

11. R.C.M. 912(b)(2) provides in pertinent part:

    Upon a motion ... containing *an offer of proof* of matters which, *if true,* would constitute improper selection of members, the moving party *shall be entitled to present evidence....*

(emphasis added). This standard is substantially lower than that required by the federal counterpart of R.C.M. 912(b)(2) which requires a "sworn statement of facts which, if true" would constitute noncompliance. 28 U.S.C. § 1867(d) (1982).

R.C.M. 1102(b)(2). Third, he could have made the same request of the military judge. *See* R.C.M. 1102(a).

The majority finds that the appellant "raised the question" in his post-trial submission but suggests that "his request for relief was denied." This representation misstates the facts because the appellant did not affirmatively assert the matter as a legal error in the proceeding. Instead, he made a tactical decision to exploit the infirmity in seeking clemency from the convening authority. Counsel's post-trial submission on behalf of the appellant states:

> In preparation for trial, the question of forum, the [appellant's] right to be tried by a panel of officers, enlisted members or by judge alone, was of primary concern. Once the case was referred, the panel selected was viewed as a "severe" one, and, as such, the decisions indicated at trial [to forego trial by members] were made. Since the date of the trial, information has arisen that calls into question the validity of the selection of the officer and enlisted members of that panel and the original array itself. (attachment 1) [12]

> Since selection of panel members as the deliberative body of the court martial [sic] is so critical, the mere hint of taint should be sufficient to warrant a remedy of clemency in the post trial [sic] action.

> Based on this, combined with the 106 days of restriction without civilian clothes privileges [sic], his plea of guilty and the youth and clear potential for productive service for the remainder of his life, the defense asks that the punitive discharge not be approved and that the [appellant's] sentence be reduced to the amount of time served since trial.

This tactical decision to exploit the matter raised by CPT Fierst's affidavit in a bid for clemency rather than a sentence rehearing was entirely reasonable. His tactical decision should not be second-guessed. *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977).

**12.** Attachment 1 to appellant's post-trial submission was the affidavit wherein CPT Fierst made

### D

The judicially created doctrine of waiver and the legislative—or, in this instance, executive—rules of procedural default are not fashioned with the intent to impose unjust or harsh results on individuals convicted of offenses. Rather, they are integral, necessary features of sound administration of the criminal justice system. For some accuseds there would be, in the absence of waiver, little inclination to actively pursue their rights on their "day in court." *Accord Davis*, 411 U.S. at 241, 93 S.Ct. at 1582. Instead, negligent, good faith omissions and deliberate, bad faith failures in asserting rights would be rewarded. Whether the failure is in good or in bad faith, the dangers in a contrary rule are obvious: the Government would be prejudiced by the necessity of prosecuting stale cases and the courts would be frustrated by the endless and burdensome relitigation of cases in the attempt to attain a perfect trial. *Cf. Kuhlmann v. Wilson*, 477 U.S. 436, 453, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986). Under these circumstances, finality of judicial proceedings would be difficult to attain.

Accuseds and their attorneys have ample opportunity to acquaint themselves with information and to gather evidence upon which to challenge the array. The standard imposed by R.C.M. 912 is not unduly burdensome. The waiver rule is itself limited in application to circumstances where, as in this case, irregularities of nebulous and questionable impact attend the nominating process. Weighing these factors against the detrimental effects of an opposite rule on the criminal justice system, the waiver rule of R.C.M. 912(b)(3) is entirely reasonable. There is no paucity of published opinions applying waiver to facts and circumstances not dissimilar to those of the case at bar. *See, e.g., Marsh*, 21 M.J. at 448, 450; *United States v. Wilson*, 21 M.J. 193, 197 (C.M.A.1986); *United States v. Benoit*, 21 M.J. 579, 580 (A.C.M.R.1985). Waiver of objections to the composition of juries is statutorily mandated and judicially

his initial admissions concerning his role in the nominating process.

recognized in federal criminal practice. 28 U.S.C. § 1867(a) (1982); *see, e.g., United States v. Grose*, 525 F.2d 1115, 1118–19 (7th Cir.1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). The United States Supreme Court has approved application of the waiver doctrine to allegations of improper composition of the grand jury, *Davis*, 411 U.S. at 242, 93 S.Ct. at 1582, and to alleged violations of equal protection in the selection of juries. *See Allen v. Hardy*, 478 U.S. 255, 261, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986). Accordingly, I find that the appellant's challenge to the nominating process in the case at bar has been waived.

## II

### Effect of Error

I also part company with the majority resolution of the case because the taint occasioned by CPT Fierst's participation was "dissipated." Assuming that the infirmity had not been waived by inaction at the trial level, the appropriate standard of review is whether the appellant was prejudiced. *See Smith*, 27 M.J. at 242: Applying this standard, I find no prejudice. UCMJ art. 59(a), 10 U.S.C. § 859(a).

Unlike *Daigle* and *Greene*, this record of trial reveals no evidence or representation which would justify an inference that the appellant abandoned his right to a court composed of members in order to avoid sentencing by improperly nominated or selected members.[13] *See Daigle*, 1 M.J. at 142 (C.M.A.1975); *Greene*, 43 C.M.R. at 73 (C.M.A.1970). Although the court has accepted numerous post-trial affidavits and ordered a post-trial hearing to investigate the issue at bar, the appellant has not offered any competent evidence that the composition of the court deterred him from exercising his right to be sentenced by fair and impartial members.

The appellant's briefs do not assert that his decision to forgo sentencing by members was in fact the result of the composition of the panel. His initial brief in the case does assert that he "was compelled to abandon his right to trial by members because of their improper selection"; however, he simultaneously contends that he was "unaware of the improper selection process at the time" of trial and only asserts that "the presence of such a 'severe' panel *may have* impacted" on his selection of forum. A subsequent brief sets forth an additional assertion that only *"in essence"* was he forced to abandon his statutory right to trial before court members. All of these arguments are directed only toward establishing a case of general prejudice.

*Most persuasive, however, is the evidence of record.* The conduct—or lack thereof—of appellant's defense counsel in investigating this purportedly "severe" panel belies the assertion that the composition of the panel motivated the appellant's election of forum. This failure justifies "drawing any reasonable inferences against him with respect to factual matters not fully developed in the record of trial." *Cf. United States v. Lockwood*, 15 M.J. 1, 7 (C.M.A.1983). The record reveals no nexus between the appellant's election of trial by judge alone and the infirmity in the nominating process. I find that the appellant's election of forum was not influenced by the composition of the panel. Accordingly, for the foregoing reasons, I concur in the result reached by the majority in this case.

Senior Judge DeFORD concurs in Judge WERNER's opinion.

HOLDAWAY, Chief Judge, concurring in the result:

I concur in the result. The accused elected to be tried by the military judge without

---

**13.** The appellant's post-trial submission, attached to the record as an allied paper, does recite that "once the case was referred, the panel selected was viewed as a 'severe' one, and, as such, the decisions indicated at trial [to forgo trial by members] were made." The staff judge advocate's addendum to the post-trial advice indicates, however, that the election of trial by judge alone was a *sub rosa* offer to induce acceptance of the appellant's offer to plead guilty. Neither of these documents were made under oath nor are they properly a part of the record; thus, they are not competent evidence from which to find or infer a forebearance of the right to trial by members because of severity in the panel.

members. Any issue concerning the selection process of members by the convening authority was therefore waived. I certainly would not permit the accused to avoid waiver by vague and self-serving out of court statements that the court was perceived as "severe" (whatever that means) therefore he selected a judge-alone forum. He expressed no such concern at the trial when questioned about his decision.

I note one other item, parenthetically. Had I found it necessary to reach the issue of CPT Fierst's conduct and its possible prejudicial effect on the trial, I would have found it helpful had the *DuBay* hearing inquired more deeply as to CPT Fierst's understanding of what he meant by "hard-liners" and "soft-liners." I am somewhat bemused, based on thirty years' service in every conceivable job a person could have in the military justice system, that an adjutant general captain in a divisional headquarters could possibly have such a thorough understanding of the division personnel that he could have so easily sorted the people out in such convenient categories. He should have been forced to define his terms. Moreover, CPT Fierst, and to some degree the dissent, seem to make the unwarranted assumption that an officer who believes in "hard discipline" could not try a case fairly. If that were so, few officers in a combat division (or any other command for that matter) would be eligible to sit. In short, "firmness" and "fairness" are not mutually exclusive, CPT Fierst to the contrary notwithstanding.

SMITH, Judge, dissenting:

In our initial decision in this case,[1] we found that CPT Fierst's attempt to create a "severe" panel so tainted the selection process as to require a rehearing on sentence. After careful reconsideration, I adhere to our original findings and, for the reasons stated in that opinion and below, respectfully dissent.

I

The majority, while condemning CPT Fierst's actions, holds that, because the convening authority was properly advised as to Article 25, UCMJ, requirements and personally applied them, the selection process purged the attempt to "stack" the panel. I disagree.

The importance of the nominating process was recently emphasized by Judge Cox:

Those responsible for nominating court members should reflect upon the importance of this task. It is a solemn and awesome responsibility and not one to be taken lightly or frivolously. It is a responsiblity that Congress has entrusted to convening authorities and has not required some other method of selection, such as random choice. Even so, it is the most vulnerable aspect of the court-martial system; the easiest for critics to attack. A fair and impartial court martial is the most fundamental protection that an accused servicemember has from unfounded or unprovable charges. There is a duty to nominate only fair and impartial members.

*United States v. Smith*, 27 M.J. 242, 252 (C.M.A.1988) (Cox, J., concurring).

In *Smith*, as in other cases, the Court of Military Appeals condemned the nomination or selection of court members designed "to help assure a particular outcome." *Id.* at 250. I find an attempt to assure a particular outcome in this case. The process of member nomination was deliberately subverted and fundamentally flawed. I am unable to attribute to the convening authority an ability to purge error he did not know existed nor am I persuaded that CPT Fierst was unsuccessful in his effort to pack the court.

II

Judge Werner in his concurring opinion opines that "appellant's failure to challenge the array at trial constitutes waiver." He further states that "[s]imple pretrial inves-

1. The opinion of *United States v. Hilow*, 27 M.J. 846 (A.C.M.R.1989), *vacated and reh'g en banc ordered, publication withdrawn* (A.C.M.R. 3 Feb. 1989) (order of the court en banc) (unpub.), is attached as Appendix 3.

tigation would have revealed CPT Fierst's identity and role in the nominating process." Such an assertion is, in my opinion, an *ex post facto* exercise in clairvoyance.

In his discovery request, the trial defense counsel requested "[d]isclosure of all advice, written or, oral, provided to the convening authority concerning selection of the court-martial panel" in appellant's case. Assuming that the trial defense counsel received the same documents relating to the selection of court members that were subsequently admitted as exhibits at the *DuBay* hearing, the defense counsel would not have discovered any discrepancies or indications that improper criteria were being used in the nomination/selection process. In fact, the documents do not reveal that CPT Fierst was the individual who actually prepared the list of nominees submitted by the adjutant general for the 2d Armored Division (Forward). The staff judge advocate's instructions to those individuals who compiled the lists of court member nominees and his advice to the convening authority on the selection of court members mirrored the criteria set forth in Article 25, UCMJ. There was no indication in any documents or annotations on those documents that the proper criteria had not been applied or that an additional criteria had been included, that is, hard-liners.

Even if the trial defense counsel had personally interviewed CPT Fierst, there is no indication that CPT Fierst would have revealed his improper motives when preparing the list of court member nominees. In his affidavit, CPT Fierst stated that he intentionally nominated individuals who he perceived to be "hard-liners" but that he did not realize that it was improper to apply such criteria until after appellant's

trial. In his sworn statement, CPT Fierst stated:

> Throughout this process, I had the perception that I was not to discuss this matter with anyone, and that what I was doing was somehow secretive, or not totally above board. I became even more concerned when I heard about [First Lieutenant] W.'s court-martial, and the feeling that I had that he was getting railroaded by not having a fair and impartial jury hear his case. I sensed from conversations around the command that he would not get a fair trial because he was an officer. As I further reflected on this matter, I became concerned that military justice was not evenly dealt with in this command and I wanted no part of this manipulation of military justice.

To require trial defense counsel to discover deliberately concealed misconduct in the nominating process places an extraordinary investigative burden on counsel and to expect nominating officials to willingly confess essentially criminal activity[2] to interviewing counsel is unrealistic in the extreme. I concur with the majority's opinion that "the challenged selection procedure had not been discovered nor could it reasonably have been discovered by the exercise of diligence prior to the conclusions of appellant's trial."

### III

Judge Werner also argues that there is waiver because "appellant has not only failed to challenge the array, he explicitly and without reservation waived his right to court-martial by members and requested trial by judge alone." I find that appellant's election to be tried by judge alone was induced by, or has the appearance of being induced by, the improper nomination procedure.[3]

---

**2.** Article 37(a), UCMJ, states in pertinent part:
No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. . . .

**3.** Judge Werner also states that CPT Fierst's "motives and intent in nominating potential members of court-martial panels cannot be imputed to the convening authority." Such a position totally disregards the possibility that CPT Fierst was an excellent judge of character who accomplished exactly what he intended. While the convening authority may not have shared CPT Fierst's motive and intent, the result may not have differed.

The charges were referred on 12 December 1986. The pretrial agreement was dated by appellant and trial defense counsel on 13 December 1986, but the approval signature (signed by the staff judge advocate "per voco") was dated 12 December 1986. There are no provisions in the agreement for a judge alone trial and the request for judge alone trial was dated 18 December 1986. There is no indication in the record to indicate that appellant chose a judge alone trial without the benefit of reviewing and considering the disposition and attitude of the court members and indeed in his post trial submission trial defense counsel asserted:

> In preparation for trial, the question of forum, the accused's right to be tried by a panel of officers, enlisted members or by judge alone, was of primary concern. Once the case was referred, the panel selected was viewed as a 'severe' one, and, as such, the decisions indicated at trial [judge alone] were made.

It is beyond question that one of the fundamental decisions to be made by counsel and accused at trial is the selection of forum. In each case an accused, with the advice of counsel, will attempt to determine which forum is most advantageous. Knowledge of the judge and members is weighed against, *inter alia*, the type of offense, plea, and evidence. The selection can have considerable impact on findings and sentence and is not taken lightly.

Here CPT Fierst attempted to stack the panel with hard-liners. Trial defense counsel states that the panel was viewed as severe and, because of its perceived severity, a judge alone trial was selected. This court's proponents of waiver find that there is no connection between CPT Fierst's conduct, the perceived severity of the panel, and accused's selection of forum. I lack their clarity of insight and, within the context of an obvious attempt to subvert the system, accept the trial defense counsel's assertion and find nexus.[4]

This case points out one of the fundamental weaknesses of our system. The member selection process, completely in the hands of the government, is highly vulnerable to prosecutorial manipulation. I find it difficult to believe that my brothers strain to affirm a case so clearly tainted by a nominating official.

I would return this case for a rehearing on sentence.

## APPENDIX 3

### ACMR 8601499

United States Army Court of
Military Review

13 January 1989

United States, Appellee

v.

Private E2 Jay M. Hilow,

261–59–8700,

United States Army, Appellant
Before MYERS, SMITH, and
BASHAM, Appellate Military Judges.

### OPINION OF THE COURT ON FURTHER REVIEW

SMITH, Judge:

Appellant was tried by a military judge sitting as a general court-martial on 18 December 1986 at Bremerhaven, Federal Republic of Germany. Pursuant to his pleas, he was found guilty of two specifications of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ]. The convening authority approved his sentence to a bad-conduct discharge,

---

**4.** Contrary to Chief Judge Holdaway's statement that "CPT Fierst, and to some degree the dissent, seem to make the unwarranted assumption that an officer, who believes in 'hard discipline' could not try a case fairly," my dissent does not make such an assumption. Rather, it is based on the belief that CPT Fierst's attempt was to create a court that was not fair and impartial. Further, based on service starting in 1959 in both enlisted and line officer status and as a JAGC officer, I am not in the least "bemused", as is the Chief Judge, that an adjutant general captain might have sufficient understanding of human nature and division personnel to make a credible attempt at improperly stacking a court.

confinement for four months, total forfeitures, and reduction to Private E1.

On appeal appellant alleges, *inter alia,* that he was denied the right to a fair and impartial sentence proceeding because the nomination and selection of the court members detailed to his court-martial were improper. Appellant argues that he was "effectively coerced into waiving his right to trial by court members" because the improperly selected members were perceived to be and were in fact "severe." In support of his assertion of error, appellant refers to the affidavit of Captain (CPT) Fierst which was attached to appellant's post-trial submission [attached hereto as Appendix 1]. CPT Fierst, assigned as a deputy adjutant, alleged among other things that he was directed by members of the Office of the Staff Judge Advocate to "select nominees [for courts-martial panels] who were commanders and supporters of a command policy of hard discipline."

Captain Fierst's affidavit either directly or by implication raised serious questions/assertions of improper selection of panel members and unlawful command influence on the part of the command and staff of the 2d Armored Division (Forward). A limited hearing was ordered under the provisions of *United States v. Du-Bay,* 37 C.M.R. 411 (C.M.A.1967). *United States v. Hilow,* ACMR 8601499 (A.C.M.R. 16 Dec.1987) (unpub.).

The record of trial was returned to The Judge Advocate General for remand to a different convening authority for a hearing on the method of selection of panel members and command influence allegations. The military judge, under the provisions of Article 39(a), UCMJ, received available evidence bearing on the issue of whether CPT Fierst's allegations were true and to answer questions asked by this court, specifically:

a. Did a member of the Adjutant General's office of the 2d Armored Division (Forward) prepare a roster or list of possible court member nominees?

b. Did the Staff Judge Advocate or a member of his staff or anyone else direct or request CPT Fierst to select nominees who were commanders and supporters of a command policy of hard discipline?

c. Were the names of officers in the rank of First Lieutenant removed from "this list" because the Assistant Division Commander believed "they lacked experience"?

d. Did anyone "explain" to CPT Fierst that the convening authority would be provided a list of all soldiers (along with the nominees) to "give the appearance that no particular group was excluded"? If so, who told this to CPT Fierst?

e. If a list of "nominees" was prepared by CPT Fierst, were any or all of them selected for court duties?

After a thorough hearing, the military judge entered written findings of fact and answers to this court's specific questions [attached hereto as Appendix 2]. In essence, the hearing judge found that there was no evidence supporting CPT Fierst's conclusion that "the SJA [Staff Judge Advocate] wanted [him] to select nominees who were commanders and supporters of a command policy of hard discipline." The military judge, however, found that CPT Fierst did in fact select nominees who he perceived to fit this criteria. CPT Fierst's list of 30 persons was submitted to the convening authority, together with lists of nominees from two subordinate jurisdictions. The three lists together contained 47 names. The convening authority selected 30 people for court-martial duty, 19 of whom were from CPT Fierst's list. Of the 10 people detailed to appellant's court-martial, 6 were from CPT Fierst's list. The judge further found that the convening authority received and applied the correct advice pursuant to Article 25(d)(2), UCMJ, in selecting the members for duty.

The hearing judge's findings of fact are supported by the record and although CPT Fierst's conclusions as to his directions were not, in our opinion, the result of specific instructions on the part of the SJA or his deputy, we are constrained to note that CPT Fierst's conclusion should or would be difficult to reach in a jurisdiction in which the task of selecting court members was

viewed as "a solemn and awesome responsibility and not one to be taken lightly or frivolously." *See United States v. Smith,* 27 M.J. 242, 252 (C.M.A.1988) (Cox, J. concurring).

## I

Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 912(b)(1) [hereinafter R.C.M.] requires that a motion challenging the selection of members be made "[b]efore the examination of members ... or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier." Waiver is predicated upon a failure to make a timely motion. R.C.M. 912(b)(3). It is clear in this case that CPT Fierst's procedure for selecting nominees was discovered after trial and only after CPT Fierst became ·concerned that "military justice was not evenly dealt with" in the command and voluntarily came forward. Under these circumstances, we find that the challenged selection procedure had not been discovered nor could it have been discovered by the exercise of diligence prior to the conclusion of appellant's trial. Appellant raised the issue to the convening authority in his post-trial submission. His request for relief was denied. The issue was preserved for appeal.

## II

The procedure employed by CPT Fierst in selecting as nominees "supporters of a command policy of hard discipline" is a clear violation of the criteria required to be used by a convening authority when selecting members for a court-martial.[1] *See United States v. McClain,* 22 M.J. 124, 131–132 (C.M.A.1986) (selection of court members who will adjudge heavy sentences is not a basis for selection authorized by Article 25(d)(2), UCMJ). CPT Fierst was not, however, the convening authority and the convening authority properly applied

Article 25 criteria when selecting the members in this case even though, unbeknown to him, he was using a "tainted" list. The question before the court is whether CPT Fierst's attempt to "stack" the court so flawed the process as to invalidate the convening authority's selection. We find that it did.

Selection of court members designed or intended to "achieve a particular result as to findings or sentence" is prohibited. *United States v. Smith,* 27 M.J. at 250 (quoting *United States v. McClain,* 22 M.J. at 132). Previous cases have generally involved the use or imputed use of improper criteria by the convening authority. *United States v. McClain,* 22 M.J. at 132 (improper advice provided by the staff judge advocate was imputed to the convening authority where action of the convening authority reflected reliance upon the advice); *United States v. Greene,* 43 C.M.R. 72 (C.M.A.1970) (improper selection found where SJA had recommended only senior officers be selected and only senior officers were selected); *United States v. Hedges,* 29 C.M.R. 458 (C.M.A.1960) (where seven of nine members of court had primary duty assignments involving crime prevention, detection, or control, the appearance of a handpicked court favoring the government was so great as to require reversal).

As a practical matter, the convening authority must rely on subordinates to make recommendations when selecting court members. Misconduct or misapplication of the appropriate criteria by nominating officials may taint the actual selection process by the convening authority. In addition, even though the convening authority may be unaware that nominations were made using inappropriate criteria, the public will suspect, especially upon selection of those nominees, that the convening authority applied the same improper criteria to the selection process. *Cf. United States v. Smith,* 27 M.J. at 251 (when a prosecutor participates in the selection process "the public will suspect that the membership

---

**1.** Article 25(d)(2), UCMJ, requires the convening authority to detail service members to courts-martial who are, in his opinion, "best qualified

for the duty by reason of age, education, training, experience, length of service, and judicial temperament."

mirrors his preference."). We, however, do not conclude that whenever a subordinate applies inappropriate criteria in nominating potential court members that there is reversible error. We do not establish a *per se* rule for we can envision situations where the appearance of or potential for such a taint may be dissipated through the selection process, voir dire, challenges, or the circumstances surrounding the attempt itself. Appellate courts, as well as convening authorities, are, however, required to ensure "that 'court packing' does not occur in courts-martial—or even *seem to occur.*" *United States v. Smith*, 27 M.J. at 250 (emphasis added).

In this case, although the convening authority was not attempting to stack the court in favor of the government, one of his subordinates was making such an attempt. Although we can not definitively determine whether the convening authority's selection of CPT Fierst's nominees created a "severe" panel, we recognize a reasonable probability that the court was in fact stacked, thereby, subverting appellant's option to select trial by members. Military due process requires that an accused be given an unfettered option to chose trial by members. Even if CPT Fierst's stated purpose was not realized, we find that his intent and, therefore, the appearance of evil remains where 19 (nearly two-thirds) of his nominees were selected as court members. *See United States v. McClain*, 22 M.J. at 131 (it is not the impact, but the intent behind the selection of court members which made the selection process incompatible with Article 25). *Cf. United States v. Smith*, 27 M.J. 242 (the convening authority's action to include female court members on court-martial involving sexual misconduct was intended to achieve a particular result as to findings and sentence). We will take corrective action. We have considered the other errors

raised by appellant and find them to be without merit.

We find no evidence that the court's composition induced appellant to plead guilty. *See United States v. McClain*, 22 M.J. at 128 (accused's attack on findings ·of guilty not allowed where there was no evidence that the manner of selecting court members induced him to plead guilty). Appellant submitted a pretrial agreement the day following referral of the charges and entered provident pleas of guilty. It is obvious that his decision to plead guilty was made prior to referral. Accordingly, the findings of guilty are affirmed. *United States v. Daigle*, 1 M.J. 139, 141 (C.M.A. 1975) (where accused ̇entered plea of guilty, improper selection of court-martial members did not require reversal of the conviction but only of the sentence). The sentence is ̷set aside. The same or a different convening authority may order a rehearing on the sentence.

Judge BASHAM concurs.

MYERS, Senior Judge, dissenting:

There is little doubt that the selection criteria utilized by CPT Fierst was improper, and that use of such criteria was properly condemned by the Court of Military Appeals in *United States v. McClain*, 22 M.J. 124 (C.M.A.1986), and *United States v. Smith*, 27 M.J. 242 (C.M.A.1988), among others. However, there are two fundamental differences between the facts of this case and the facts of those cases: (1) in those cases the improper criteria were utilized by the staff judge advocate and/or the convening authority, and (2) the use of the improper selection tainted the entire membership of the panels. Here, neither of those factors are present. The improper criteria in this case were utilized by a misguided member of a subordinate command from whose list only a portion of the final panel selections were made.[1] There is no

---

1. In finding number 7 of his findings of fact, the military judge found at the *DuBay* hearing, *see United States v. Dubay*, 37 C.M.R. 411 (1967), that:

Of the 30 persons selected by the CA [convening authority] for court-martial duty, 19 were people who had been on the list created by

CPT Fierst. The list submitted by CPT Fierst contained 30 names. In the case of *U.S. v. Hilow*, the convening order (AE XI) shows 6 people who were on CPT Fierst's list. If the case were tried by officers alone, 3 of the 7 members would be from CPT Fierst's list. If the case was tried by officers and enlisted, 4

evidence in this case that the actions or intentions of either the staff judge advocate or the convening authority were improper. On the contrary, the evidence adduced at the *DuBay* hearing established that the staff judge advocate and the convening authority acted properly and in good faith in the selection process. Nor is it alleged that any of the nominees on the list in question were otherwise ineligible to sit. What we have, then, is a situation where a subordinate functionary, whether through excessive zeal or excessive lack of good sense, or both, undertook to select personnel from his command who he thought were inclined to "hard discipline." [2]

It is also significant that appellant insisted that his election to be tried by judge alone was voluntary,[3] that he entered an undeniably provident plea of guilty, freely admitted his guilt to the military judge during the providence inquiry, and entered into a highly favorable pretrial agreement with the convening authority which he improved upon by receiving a significantly lesser sentence from the military judge. Only after CPT Fierst's affidavit was promulgated did the trial defense counsel

allege for the first time that because the court panel appeared "severe," it affected "decisions indicated at trial." It is noted that he carefully avoided saying that, but for the "severity" of the panel, he would have been inclined to elect trial by members.

I utterly fail to see, therefore, where the appellant was prejudiced by the process by which the court members who did not sit on his case were selected. My brothers in the majority say: "We, however, do not conclude that whenever a subordinate applies inappropriate criteria in nominating potential court members that there is reversible error. We do not establish a *per se* rule for we can envision situations where the appearance of or potential for such a taint may be dissipated through the selection process, voir dire, challenges, or the circumstances surrounding the attempt itself." I agree completely with that view, but fail to understand why my said brothers did not apply those sensible standards here. The evidence reveals that in addition to the nominees submitted by the subordinate commands, the staff judge advocate provided the convening authority with an "Alpha" roster which supposedly contained the names of all personnel in the jurisdic-

---

of the 7 members would be from CPT Fierst's list.

2. In his affidavit, CPT Fierst stated that he became "concerned" over what he had done for fear that a fellow officer, then pending trial, would not have a "fair and impartial jury hear his case." One must appreciate the irony of the fact that this allegedly improperly selected court, inclined to hard discipline, acquitted that officer.

3. After the military judge advised appellant of his choices of forum, the following colloquy ensued:

MJ Now, do you have any questions, at all, about these three types of trial that are available to you?
ACC No questions, sir.
MJ Have you discussed these options with your attorney and do you feel that you understand them?
ACC Yes, sir.
MJ Now, which option is it that you select?
ACC I choose military judge alone, sir.
MJ And, do you have a written request to that effect?
. . . .

MJ Now, I have been handed what has been marked as Appellate Exhibit I, a written request for trial before military judge alone. And, my first question to you, Private Hilow, regarding this document, is whether this is your signature, in the upper right-hand portion, where my thumb is located (holds in view of the accused)?
ACC Yes, sir, that's my signature.
MJ Okay. And, was my name, Lieutenant Colonel Donald Morgan, typed onto the form, before you signed it?
ACC Yes, sir, it was.
MJ Well, I've got to know whether this request is voluntary, on your part, so I want you to tell me whether you're submitting the request of your own free will?
ACC It's my own free will, sir.
MJ Has anyone tried, in any way, to coerce you or to force you into signing or submitting this request?
ACC No, sir.
MJ Is this something that you've thought about—that you've discussed with your attorney—and, something that you've decided that you truly want to do?
ACC Yes, sir.

tion. Thereafter, the convening authority, in making his selections, wrote in the names of two officers who had not appeared on the list submitted to him. That convinces me that the convening authority made his selections from his personal knowledge of the individuals concerned, after having received correct advice from the staff judge advocate. Therefore, the convening authority obviously did not depend solely on input from his subordinates, but made his own personal choices. If this does not dissipate any taint attaching to CPT Fierst's list, I cannot imagine what would. Add to that the other considerations discussed in the preceding paragraph, it becomes clear that any conceivable prejudice to appellant by CPT Fierst's abortive attempt to "pack the court" fades into microscopic significance.

The holding in this case creates yet another burden on the staff judge advocate and the convening authority by requiring them to look behind every court panel nomination from subordinate commands to ensure that the selection processes utilized by those commands were correct. To inject such a requirement into the system could further complicate a processing system already overly complicated and could significantly slow the processing of cases in which the processing time limits are very rigid. *See United States v. Burton,* 44 C.M.R. 166 (C.M.A.1971) ("90–day Rule"); Manual for Courts–Martial, 1984, Rule for Courts–Martial 707 ("120–day Rule"). It is submitted that rather than enhance the quality of justice, such a requirement could in fact foster injustice. The public image of military justice will not be enhanced if the administration of courts-martial becomes so complex and burdensome that misconduct goes unpunished, especially in times of national emergency. Certainly, we all must zealously safeguard the appearance of fairness in the military justice system, but we should also avoid carrying appearances to unreasonable extremes. Somewhere there must be a line drawn between form and substance, and in my view, it should be drawn before it reaches this case.

I would affirm the findings of guilty and the sentence.